■ BENJAMIN I. WECHSLER, Respondent, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants. [597 NYS2d 507] —Mahoney, J. Appeal from an order of the Supreme Court (Williams, J.), entered August 3, 1992 in Sullivan County, which granted plaintiff's motion for a preliminary injunction and denied defendants' cross motion for summary judgment dismissing the complaint.

In this appeal, our review is sought of yet another aspect of the ongoing struggle between plaintiff and defendant State of New York to define incidents appurtenant to the former's fishing and hunting rights in certain of the State's land located in the Neversink gorge area in Sullivan County. This time the dispute concerns plaintiff's right to use a certain footbridge over the Neversink River to access a portion of the lands encumbered by the hunting and fishing rights.

As is recounted in our prior decisions (Matter of Wechsler v New York State Dept. of Envtl. Conservation, 153 AD2d 300, affd 76 NY2d 923; Wechsler v People, 147 AD2d 755, lv denied 74 NY2d 610; Orange & Rockland Utils. v Philwold Estates, 70 AD2d 338, mod 52 NY2d 253), in the 1920s William Bradford acquired title to a tract of land in excess of 6,000 acres which encompassed the entire Neversink gorge area and included approximately 3½ miles of frontage along the east and west banks of the Neversink. In 1923, he conveyed all or

substantially all of the property east of the Neversink (approximately 1,300 acres) and 500 acres along a part of the west bank to Alfred Crane (hereinafter collectively referred to as the 1,800-acre tract). However, in so doing he reserved to himself, his heirs, licensees and assigns the exclusive right to fish and hunt upon the 1,800-acre tract and "the right, to enter upon and make such use of the premises hereby conveyed as may be necessary for the proper enjoyment of the fishing and hunting privileges hereby reserved".

In 1934, Bradford died seized of the reserved hunting and fishing rights and lands west of the Neversink less the 500-acre tract (hereinafter the west lands). Following several intermediate conveyances, both these interests were acquired by Philwold Estates, Inc. (hereinafter Philwold) which, during the period 1939 to 1968, entered into agreements with various sportsmen's clubs permitting them to fish, hunt and trap on the 1,800-acre tract. In 1954, one of the clubs, acting on behalf of Philwold, constructed a cable and steel suspension footbridge over the Neversink. It is uncontroverted that the bridge, which connected the southerly portion of Philwold's west lands to the southerly portion of the 1,300-acre tract and whose easterly terminus was situate upon that tract, was constructed without consent of its then owner, Orange and Rockland Utility Company. Nonetheless, it apparently was used by Philwold and its licensees over the years as a means of access to the southerly portion of the 1,300-acre tract for purposes of exercising the reserved hunting and fishing rights.

In 1968, things began to change. Plaintiff, a partner in the Philwold Company, the partnership which owned Philwold, retired. As part of his retirement distribution, Philwold conveyed to plaintiff the reserved hunting and fishing rights. In addition, while Philwold retained its interest in the southerly portion of the west lands upon which the footbridge was constructed (hereinafter the southerly tract), it also conveyed to plaintiff the northerly 2,325 acres. In conjunction with this conveyance, Philwold granted plaintiff various easements for ingress and egress over certain private roads and beaten paths existing in its retained southerly tract. Significantly, however, it did not specifically grant plaintiff any rights relative to his use of the footbridge. By 1981, the State acquired title to the 1,800-acre tract from Orange and Rockland upon which the easterly terminus of the footbridge lay (albeit subject to the reserved hunting and fishing rights), and in 1991 acquired the southerly tract from Philwold upon which the westerly terminus was situate.

The controversy at issue here began in December 1991 when defendant Department of Environmental Conservation (hereinafter DEC) notified plaintiff of its intention to remove the footbridge due to lack of structural soundness. Contending alternatively that he had a deeded right to use the footbridge by virtue of the road and path easements created in the 1968 Philwold deed, that its use was a necessary incident to exercise of the reserved hunting and fishing rights or that his longstanding and continuous use thereof had ripened into a prescriptive easement, plaintiff commenced this action against defendants seeking to permanently enjoin removal of the footbridge. In conjunction therewith, he applied for a preliminary injunction. Defendants opposed the motion and cross-moved for summary judgment dismissing the complaint. Supreme Court denied defendants' cross motion and granted plaintiff preliminary injunctive relief. Defendants appeal.

We reverse. Based upon the evidence submitted we discern no factual issues with respect to plaintiff's asserted right to use the footbridge and conclude that none of plaintiff's claims in this regard, namely that he has a deeded or prescriptive right to use it or that its use is necessary to the enjoyment of the reserved hunting and fishing rights, is sustainable as a matter of law. Accordingly, defendants are entitled to an award of summary judgment dismissing the complaint.

Obviously, whether plaintiff has an expressly deeded easement to use Philwold's portion of the footbridge by virtue of the 1968 Philwold to plaintiff deed depends upon the language of the instrument itself (see, e.g., Mandia v King Lbr. & Plywood Co., 179 AD2d 150, 158; Phillips v Jacobsen, 117 AD2d 785, 786). Here, a plain reading of the relevant deed paragraph reveals that while it accords plaintiff rights of way or easements for ingress or egress over certain already established private roads and beaten paths on Philwold's retained lands in the area where Eden Brook flows into the Neversink, it quite clearly limits those roads to that portion of Hatchery Road which crosses Eden Brook (hereinafter the Eden Brook bridge) and various other unidentified roads and paths located within 600 feet of the northerly bank of that part of Eden Brook bounded by the Eden Book bridge on the west and the Neversink on the east. While evidently one of the paths in this area leads to the footbridge, as plaintiff concedes the deed makes no mention of access to and over Philwold's portion of the footbridge and grants plaintiff none of its rights, if any, in that part of it which extends over and onto the 1,300-acre tract.

Moreover, inasmuch as it is apparent from a reading of the relevant deed paragraph in its entirety that the purpose of the deeded rights of way was to facilitate exercise of Philwold's grant to plaintiff of fishing rights in that portion of Eden Brook which lay between the Eden Brook bridge and the Neversink and because access to the footbridge is not necessary for this purpose, we see no reason to interpret the deed language to include, by implication, a right to use Philwold's portion of the footbridge. The only purpose of such use would be to facilitate use of the reserved hunting and fishing rights in the 1,300-acre tract which right is neither mentioned nor alluded to in the paragraph or anywhere in the entire deed. Finally, because we find the parties' intent to be clearly and unambiguously set forth in the deed itself, evidence submitted by plaintiff regarding surrounding circumstances and unexpressed intentions of the parties is not admissible to alter the plain import of the deed language *(see, e.g., Gross v Cizauskas,* 53 AD2d 969, 970). Accordingly, the presence of such evidence, inasmuch as it is barred by the parol evidence rule, cannot create factual issues sufficient to warrant denial of defendants' cross motion for summary judgment *(cf., State Univ. Constr. Fund v Aetna Cas. & Sur. Co.,* 189 AD2d 929).

With respect to plaintiff's prescriptive easement claim, we note initially that because the prescriptive period ran during the period the footbridge connected two separately and privately owned parcels of land, neither of which belonged to plaintiff, in order for him to prevail on this claim he must establish the requisite elements of a prescriptive easement against both the then-owner of the 1,800-acre tract (Orange and Rockland) and the then-owner of the southerly tract (Philwold). While it appears from the record that plaintiff has succeeded in establishing his prescriptive right to the easterly portion of the footbridge, he has not sustained the requisite showing to obtain a prescriptive right over the westerly portion thereof. Accordingly, his claim must fail.

Undoubtedly, the proponent of a prescriptive easement claim bears the burden of proving, by clear and convincing evidence, hostile, open, notorious and continuous use over the other's land for the prescriptive period *(see, e.g., Hamilton v Kennedy,* 168 AD2d 717, *lv denied* 77 NY2d 808; *Kusmierz v Baan,* 144 AD2d 829; *Susquehanna Realty Corp. v Barth,* 108 AD2d 909). While, in general, proof of open, notorious, continuous and undisputed use gives rise to a presumption that the use was hostile and shifts to the opponent the burden of coming forward with evidence that the use was permissive or

by license *(see, e.g., Kusmierz v Baan, supra,* at 830), in situations where it is shown that the user and the landowner are related by blood or part of a select group of friends, the proponent is not accorded the benefit of the presumption and must present affirmative facts to support the conclusion that his or her use was under a claim of right and adverse to the interests of the landowner *(see, Weinberg v Shafler,* 68 AD2d 944, 945, *affd* 50 NY2d 876; *see also, Sleasman v Williams,* 187 AD2d 852; *Esposito v Stackler,* 160 AD2d 1154; *cf., Susquehanna Realty Corp. v Barth, supra,* at 909-910).

Here, inasmuch as the record evidence establishes that Philwold was owned by a family partnership of which plaintiff formerly was a member until his retirement in 1968 and that he admittedly used the footbridge permissively since its erection, we find that ample evidence exists to negate the presumption of hostility *(see, Weinberg v Shafler, supra).* Thus, the onus remained upon plaintiff to come forward with evidence of hostile use sufficient to raise a triable issue of fact. Moreover, inasmuch as plaintiff's use of the footbridge from its erection in 1954 until 1968 obviously was permissive and there exists a presumption that a use which was permissive in its inception continues until the contrary appears *(cf., Shandaken Refm. Church v Leone,* 87 AD2d 950, 951, *lv denied* 57 NY2d 602), satisfaction of this element requires not only evidence tending to establish the subsequent assertion of an adverse right, but that such was made known to the landowner *(see, e.g., Susquehanna Realty Corp. v Barth, supra; Hassinger v Kline,* 91 AD2d 988; *Shandaken Refm. Church v Leone, supra).* This, however, plaintiff has failed to do. While the record is replete with evidence that plaintiff's use of the footbridge was adverse to Orange and Rockland's ownership rights, he simply has not shown the assertion of a right adverse to that of Philwold. Indeed, the only evidence submitted in this regard is the conclusory statement by Philwold's president, Robert Wechsler, that he had no recollection of giving plaintiff permission to use the bridge after 1968. Such evidence falls far short of meeting the evidentiary threshold.

Plaintiff's final claim of necessity is similarly unavailing. It has already been established that the reserved hunting and fishing rights do not carry with them the power to construct or maintain permanent structures on the burdened 1,800-acre tract *(Wechsler v People,* 147 AD2d 755, 757, *supra).* Nor can it be said that the footbridge is necessary to the "proper enjoyment" of the reserved hunting and fishing rights within the meaning of the 1923 reservation. It is undisputed that the

footbridge was not in existence at the time of the 1923 reservation and that said rights were exercised without any apparent difficulty for a period in excess of 30 years before the footbridge was built. This, combined with the also undisputed fact that there are other available means of accessing the entire 1,800-acre tract without having to use the footbridge (albeit less convenient), negate any claim of necessity as a matter of law.

We have reviewed the remaining arguments and find them to be without merit or rendered academic by our resolution.

Weiss, P. J., Levine and Crew III, JJ., concur. Ordered that the order is reversed, on the law, without costs, motion denied, cross motion granted, summary judgment awarded to defendants and complaint dismissed.