Albert H. TALMAGE, Plaintiff,

v.

RONALD ALTMAN TRUST,
et al., Defendants.

No. CV 92–2029.

United States District Court,
E.D. New York.

Dec. 30, 1994.

Richard Pellicane, Southampton, NY, for plaintiff.

Thomas E. Behringer, Jr., Westhampton Beach, NY, for defendant Hamptons Mortg. Corp.

Kirschenbaum & Kirschenbaum, P.C. by Ira Levine, Garden City, NY, for defendants Ronald Altman Trust, Weaver, Larry Everston, Annette Everston, Charles Hausman, Diane Hausman, Lehrer, Robert L. Eisen, Linda Eisen, Frank Russo, Eileen Russo, McAuliffe and U.S. Trust Company of California, N.A.

Esseks, Hefter & Angel, by William W. Esseks, Riverhead, NY, for defendants Ellen C. Hirt, John E. Hirt, Richard A. Hirt, Maxine H. Hirt, Robert E. Hirt, Virginia A. Hirt, and Cook Estates Ass'n, Inc.

Dollinger, Gonski, Permut & Hirschhorn, by Michael Permut, Carle Place, NY, for defendants Cummings, Nat Kurtz, Lora E. Kurtz, Monaco, Stanley Mirsky, Susan S. Mirsky, Citibank, N.A., The Bank of New York, Emigrant Sav. Bank, and SRF–Builders Capital Corp.

Certilman, Balin, Adler & Hyman, by Thomas J. McNamara, East Meadow, NY, for defendant Citibank, N.A.

Bruce Kennedy, P.C., Amityville, NY, for defendants Forem Associates, Ltd., Moskowitz, Beckoff, William O. Hiltz, and Judith B. Hiltz.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Albert H. Talmage brings this diversity action to determine, pursuant to Article 15 of New York's Real Property Actions and Proceedings Law ("RPAPL"), his claim to certain real property located in the Hamlet of Bridgehampton, Town of Southampton, Suffolk County, New York (the "Subject Property").[1] The answering defendants claim to be owners or mortgagees of certain lots and common areas comprising the Subject Property. Presently before the Court are motions by various of the answering defendants for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss the amended complaint and to determine that these defendants have lawful titles and interests in the Subject Property based on adverse possession.[2] For the reasons below, the motions are granted.

## I. BACKGROUND

In his amended complaint and in opposition to defendants' motions, plaintiff claims he derived title to property situated at the location of the Subject Property[3] through Charles A. Pierson ("Pierson"), an alleged former owner of the property. Defendants maintain that the property to which plaintiff claims title (the "Pierson Property") bordered but did not overlap the Subject Property, and, therefore, neither plaintiff nor those he claims are his predecessors in interest ever held title to any part or portion of the Subject Property. Defendants maintain further that Pierson conveyed the Pierson Property prior to his death, and, therefore, plaintiff could not have inherited that property. Alternatively, the defendant owners assert adverse possession as an affirmative defense and counterclaim claiming that they acquired titles to their respective lots in the Subject Property through adverse possession; as a result, defendants claim the titles

1. The following are named as defendants in the amended complaint: Ronald Altman Trust, Martine Ivers Weaver, Larry Everston, Annette Everston, Charles Hausman, Diane Hausman, Gaby Ferman Lehrer, Ellen C. Hirt, Maxine H. Gillman a/k/a Maxine H. Hirt, Richard A. Hirt, John E. Hirt, Robert E. Hirt, Virginia A. Hirt, Robert F. Cummings, Jr., Nat Kurtz, Lora E. Kurtz, Forem Associates, Ltd., Robert L. Eisen, Linda S. Eisen, George Moskowitz, Edward Beckoff, Michael P. Monaco, Frank A. Russo, Eileen Russo, William O. Hiltz, Judith B. Hiltz, E. Timothy McAuliffe, Cook Estates Association, Inc., Stanley Mirsky, Susan S. Mirsky, Jacob D. Rozbruch, Marsha G. Rozbruch, Robert Stokvis, Hamptons Mortgage Corp., Southold Savings Bank, Citibank, N.A., SRF–Builders Capital Corp., John Nealon, The Dime Savings Bank of NY, Empire of America–California Federal Savings Bank, Republic National Bank of NY, The Bridgehampton National Bank, The North Fork Bank & Trust Co., The Bank of New York, U.S. Trust Co. of California, N.A., Chemical Bank, The Banking Center, Emigrant Savings Bank, U.S. Trust Co. of NY, Richmond Hill Savings Bank, and National Westminster Bank USA.

2. The moving defendants are Ronald Altman Trust, Martine Ivers Weaver, Larry Everston, Annette Everston, Charles Hausman, Diane Hausman, Gaby Ferman Lehrer, Ellen C. Hirt, Maxine H. Gillman a/k/a Maxine H. Hirt, Richard A.

Hirt, John E. Hirt, Robert E. Hirt, Virginia A. Hirt, Robert F. Cummings, Jr., Nat Kurtz, Lora E. Kurtz, Forem Associates, Ltd., Robert L. Eisen, Linda S. Eisen, George Moskowitz, Edward Beckoff, Michael P. Monaco, Frank A. Russo, Eileen Russo, E. Timothy McAuliffe, Cook Estates Association, Inc., Stanley Mirsky, Susan S. Mirsky, Citibank, N.A., SRF–Builders Capital Corp., The Bank of New York, and Emigrant Savings Bank. Defendants William O. Hiltz and Judith B. Hiltz also moved for summary judgment, but plaintiff voluntarily discontinued this action as against them.

3. The Subject Property is described in the amended complaint as follows: (a) Lots No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, Common Area No. 1, and Common Area No. 2 on the "Map of Cook Estates," filed in the Suffolk County Clerk's Office on December 23, 1983 as Map No. 7673; and (b) Lots No. 1, 2 and 3 on the map entitled, "Minor Subdivision of Property of Ellen C. Hirt," prepared by Frank J. Barylski, L.S., dated May 28, 1980, and filed in the Southampton Town Clerk's Office on December 10, 1980 as Minor Subdivision Map No. 500 and the map entitled, "Revised Minor Subdivision Map of Property of Ellen C. Hirt," prepared by Frank J. Barylski, L.S., dated May 28, 1980 and revised October 8, 1981, and filed in the Southampton Town Clerk's Office on April 1, 1982 as Minor Subdivision Map No. 620.

and interests of the defendant owners and mortgagees in the Subject Property are free of any claim by plaintiff.

According to plaintiff, Pierson acquired title to the Pierson Property as grantee of a deed from Edward Hildreth (also referred to as "Edward A. Hildreth") and Harriet Hildreth in 1883. The deed from Edward Hildreth and Harriet Hildreth to Pierson described the property as follows:

> All that tract and parcel of land situate in said Bridge Hampton, Town of Southampton, containing by estimation twenty-seven acres be the same more or less and bounded North by lands of Oliver Halsey and E. Jones Ludlow, East by lands of said Ludlow and John A. Sandford and James L. Sandford, South by the highway and lands formerly of Lodowick H. Cook and West by lands formerly of said Cook and coming to a point at a large hole of open water in Kellis Pond swamp.

Amended Complaint ¶ 105; Affidavit of Richard Pellicane in Opposition to Defendants' Motion for Summary Judgment ("Pellicane Aff."), App. A, at 2. According to plaintiff, Edward Hildreth acquired the property from James L. Haines (also referred to as "Haynes") by deed in 1878; Haines had acquired the property from Sarah Ludlow and Albert Ludlow by deed in 1856. As plaintiff claims, the descriptions of the property in the 1883 deed to Pierson, the 1878 deed to Hildreth, and the 1856 deed to Haines are substantially identical. The 1878 deed described the property as follows:

> North by lands of Oliver Halsey and E. Jones Ludlow East by lands of said Ludlow of John A. Sandford and James L. Sandford, South by the highway and lands formerly of Lodowick H. Cook, and West by lands formerly of said Cook and coming to a point at a large hole of open water in the Killis Pond Swamp....

Pellicane Aff., App. A, at 1–2 (emphasis omitted). Similarly, the 1856 deed described the property as:

> [P]arcel of land situated in Mecox ... containing Twenty–Seven Acres ... and bounded ... North by Lands of Oliver Halsey and Lands formerly of Alvah Halsey deceased and Lands of the said parties

of the first part East by Land of said parties of the first part and Lands now or formerly of James Sandford South by the highway and Land of Lodowick H. Cook and West by the Land of Lodowick H. Cook and coming to a point at a large open hole of water in Killis Pond Swamp....

*Id.* App. A, at 1 (emphasis omitted).

Pierson died in 1903. Plaintiff claims that Pierson left the Pierson Property to his widow Ellen C. Pierson and his sister Caroline A. Hildreth, pursuant to a residuary clause in his will, dated January 10, 1885 and admitted to probate in Suffolk County. Amended Complaint ¶ 109. The residuary clause described the property vaguely as:

> All the rest, residue and remainder of my estate both real and personal, I give devise and bequeath to my Executor hereinafter named in trust to retain the same for a period of four years from and after my decease, and during said period my said executor is to pay to my widow if living the sum of seventy-five dollars per month out of the rents, issues, income and profits thereof, ... and after the expiration of said period of four years, I hereby direct my said executor to pay over and convey to my said wife if she then be living, one equal half of my said residuary estate and the remaining half to my sister Caroline A. Hildreth....

Pellicane Aff. ¶ 17 and App. B, at 2 (emphasis omitted). In July 1909, pursuant to Pierson's will, the executor of Pierson's estate, Samuel P. Hildreth, conveyed to Ellen C. Pierson and Caroline A. Hildreth:

> ALL the land owned by Charles A. Pierson at the time of his decease situate either in the Town of Easthampton or in the town of Southampton, Suffolk County New York which was devised to his Executor in trust by the fifth paragraph of his said will.

*Id.* ¶¶ 19–20 and App. B, at 1–2. Immediately thereafter, Pierson's widow and Pierson's sister conveyed their interests in this property to George H. Hildreth, Charles A. Hildreth and Samuel P. Hildreth, using the same description of the property as was used in the deed by Samuel P. Hildreth, as executor, to them. *Id.* ¶ 21 and App. B, at 2;

Amended Complaint ¶ 110. By deed recorded in December 1917, Charles A. Hildreth conveyed his interest in the real property to George H. Hildreth. Pellicane Aff.App. B, at 2; Amended Complaint ¶ 111.[4] Similarly, by deed recorded in February 1927, Samuel P. Hildreth conveyed his interest in the real property to George H. Hildreth. Pellicane Aff.App. B, at 2; Amended Complaint ¶ 111.[5] George H. Hildreth died intestate in 1955,[6] and the real property passed in equal shares to his son Samuel Pierson Hildreth and daughters Edna Hildreth Osborne and Hazel Talmage, plaintiff's mother. Pellicane Aff. App. B, at 2; Amended Complaint ¶ 112. Samuel Pierson Hildreth died testate in 1968 and left his interest in the real property to his sister Edna Hildreth Osborne. Pellicane Aff.App. B, at 3; Amended Complaint ¶ 113. Hazel Talmage died testate in 1979 and left her interest in the real property to her husband Albert M. Talmage, plaintiff's father. Pellicane Aff.App. B, at 3; Amended Complaint ¶ 114. Edna Hildreth Osborne died in 1981, and her interests in the real property passed through intestacy to plaintiff. Pellicane Aff.App. B, at 3; Amended Complaint ¶¶ 116–18. Albert M. Talmage died testate in 1989, passing his interest in the real property to plaintiff. Pellicane Aff.App. B, at 3; Amended Complaint ¶¶ 115. By that point, plaintiff owned the entire interest in the real property traced to Pierson.

Thereafter, on May 1, 1992, plaintiff commenced this action claiming that the Pierson Property is situated in the location of the Subject Property and claiming title to the Subject Property based on the above chain of title.

In support of their motions, defendants present voluminous documentary evidence demonstrating that title to the Subject Property, which was a portion of a parcel of real property formerly known as "Cook Farm,"[7] passed to defendant Ellen C. Hirt, f/k/a Ellen Elizabeth Cook ("Hirt"), in 1965 through wills and probate proceedings originating from Paul Halsey, the alleged owner of Cook Farm as of June 8, 1829. In short, defendants claim that title to Cook Farm passed from Paul Halsey to his son Sylvester Halsey in 1829; from Sylvester Halsey to his nephew Lodowick H. Cook in 1847; from Lodowick H. Cook to his sons Augustus L. Cook and Samuel L. Cook in equal shares in 1876; from Augustus L. Cook and Samuel L. Cook to Augustus L. Cook in 1921; from Augustus L. Cook to his wife Katharine M. Cook in 1931; and from Katharine M. Cook to her daughter Hirt in 1965.

Documents submitted by defendants show that in 1921 Augustus L. Cook acquired his brother Samuel L. Cook's one-half interest in Cook Farm pursuant to the latter's will, dated June 16, 1919 and admitted to probate in Suffolk County on December 14, 1921. Samuel L. Cook's will provided in relevant part: "I bequeath to my Brother Augustus [L.] Cook, my one-half interest in the farm and homestead which we jointly own at Mecox in the Town of Southampton County of Suffolk State of New York...." Wagner Aff.Exh. 17. According to these records, Samuel P. Hildreth, the executor of *Pierson's* estate, was the attorney to probate Samuel L. Cook's will. In that proceeding, Samuel P. Hildreth, *inter alia,* filed the petition for the appointment of an appraiser of Samuel L. Cook's property in the Surrogate's Court, Suffolk County, for estate tax purposes. *Id.* Exh. 18. Appraisals of Samuel L. Cook's one-half interest in Cook Farm filed in the

---

4. Plaintiff does not indicate the date of the deed by Charles A. Hildreth to George H. Hildreth; however, this date is provided in Plaintiff's Answer to Interrogatories, at 2, which is attached as Exhibit 95 to the Affidavit of John M. Wagner in Support of Motion for Summary Judgment ("Wagner Aff.").

5. Although plaintiff does not indicate the date of the deed by Samuel P. Hildreth to George H. Hildreth, this date is also provided in Plaintiff's Answer to Interrogatories, at 2.

6. The amended complaint indicates that George H. Hildreth died in 1950. Amended Complaint ¶ 112. The difference in dates, however, is not significant for purposes of this Court's decision.

7. Cook Farm purportedly comprised some 54 acres located west of Halsey Lane, north of Paul's Lane, and southerly and southeasterly of a body of water known as "Kellis Pond" in the Hamlet of Bridgehampton, Town of Southampton, Suffolk County, New York. Wagner Aff. ¶ 10.

Surrogate's Court in February 1922, described the property as:

An undivided one-half part of farm of fifty acres at Bridgehampton, Suffolk County, New York, bounded northerly by land now or formerly of Oscar Edwards, easterly by Halsey Lane, south by Paul's Lane and westerly by the Pond.

*Id.* Exhs. 19, 20.

These records further show that Samuel P. Hildreth was also the attorney to probate Augustus L. Cook's will in the Surrogate's Court, Suffolk County, following the latter's death in 1931. Pursuant to his will, Augustus L. Cook left his wife "all of the Real Estate of which I shall die possessed to be hers absolutely and forever." *Id.* Exh. 11. In that proceeding, Edwin H. Pierson and Edwin J. Hildreth filed appraisals in 1932 describing Augustus L. Cook's real property as:

All that certain farm situate, lying and being at Bridgehampton, in the Town of Southampton, Suffolk County, New York, bounded northerly by and of Tweyford and Kellis Pond, on the west by land of Harold Rogers, on the south by Pauls Lane and on the east by Halsey Lane, containing fifty-four (54) acres.

*Id.* Exh. 13.

Katharine M. Cook died testate in 1965, and pursuant to a residuary clause in her will, dated November 16, 1943 and admitted to probate in Suffolk County on January 13, 1965, Cook Farm passed to her daughter Hirt. In an affidavit submitted by Hirt, she states that after her father, Augustus L. Cook, died in 1931, her mother "began to give away and sell off portions of the farm," as evidenced by certain of those deeds attached to her affidavit, "because it became difficult for her to pay the taxes on the entire farm." Affidavit of Ellen C. Hirt in Support of Motion for Summary Judgment ("Hirt Aff.") ¶ 7. Consequently, Hirt inherited only those portions of Cook Farm not given away or sold by Katharine M. Cook.

After she acquired what remained of Cook Farm, Hirt filed two minor subdivision maps for the property and continued to convey to others portions of the property. *Id.* ¶ 9.

The first minor subdivision map, entitled "Minor Subdivision of Property of Ellen C. Hirt," was filed in the Southampton Town Clerk's Office on December 10, 1980 as Minor Subdivision Map No. 500; the second such map entitled, "Revised Minor Subdivision Map of Property of Ellen C. Hirt," was filed in the Southampton Town Clerk's Office on April 1, 1982 as Minor Subdivision Map No. 620. By deed dated March 31, 1982, recorded in the Office of the Suffolk County Clerk on May 4, 1982, Hirt conveyed her remaining interest in the farm to Halsey Lane Investments.

In December 1983, Halsey Lane Investments filed a major subdivision map for the property entitled "Map of Cook Estates." Thereafter, Halsey Lane Investments developed the Subject Property to residential housing. Defendants submit documents evidencing that the defendant owners derived their titles to certain lots and common areas in the Subject Property through deeds originating from Ellen C. Hirt; and that the defendant mortgagees hold mortgages executed by the defendant owners.

Hirt states that she was born in 1917 in a house located on Cook Farm at the northwest corner of Paul's Lane and Halsey Lane, where she lived until 1938. Hirt Aff. ¶ 3. After that time, she claims she continued to visit the property on weekends, during vacations, and during visits to relatives. *Id.* She states that from 1921 to approximately 1982 or 1983, Cook Farm was continuously farmed for potatoes by her father Augustus L. Cook, her uncle Samuel L. Cook, and other farmers who leased it from her father, mother or herself. *Id.* ¶ 15. Defendants submit a map prepared by John J. Raynor ("Raynor"), a licensed professional engineer and land surveyor, which they claim depicts the outer limits of the agricultural areas appearing on aerial photographs of Cook Farm taken in 1955, 1963, 1972, 1978 and 1984, and demonstrates that substantially all of the Subject Property was in agricultural use (the "Raynor map"). Affidavit of John J. Raynor in Support of Motion for Summary Judgment ¶¶ 2–3, 6. Hirt confirms that the limits of the agricultural areas on the Raynor map is consistent with her recollection of the areas

of Cook Farm that were farmed during the years in question. Hirt Aff. ¶ 16. She also confirms that she was assessed and paid the taxes on Cook Farm during the period she owned it, *i.e.* from 1965 to 1982. *Id.* ¶ 18. Hirt maintains that, to her knowledge, neither plaintiff nor any of his predecessors ever asserted any claim or title to Cook Farm prior to this action; and that neither she nor her predecessors in interest ever sought permission from plaintiff or his predecessors to use the Subject Property. *Id.* ¶ 19. Hirt claims that she and/or other members of her family are the current owners of several of the lots on the Subject Property. *Id.* ¶¶ 12–14.

To demonstrate that the Subject Property was the property in defendants' chain of title, not plaintiff's purported chain of title, defendants submit, *inter alia*, tax records of the Town of Southampton, ancient maps and surveys of the relevant area, a "Boundary Line Agreement," dated November 7, 1979, between Ellen C. Hirt and the owners of the land north of the Subject Property, and documents reflecting the chains of title to properties abutting Cook Farm and/or the Subject Property. These records, according to defendants, uniformly locate Cook Farm in the area of the Subject Property and confirm the ownership of Cook Farm by those in defendants' chain of title, *i.e.*, the Cook and Halsey families. For example, the tax records show that for tax years 1926, 1927, 1929, and 1930 taxes to the Subject Property were assessed to "Augustus L. Cook" or "Aug L. Cook"; for tax years "1937–38" taxes were assessed to "Augustus L. Cook Heirs"; for tax years "1953–54" to "1955–56," "1960–61," "1961–62," and "1963–64" taxes were assessed to "Katherine Cook"; for tax years "1965–66" to "1967–68" and "1969–70" to "1976–77" taxes were assessed (with minor variations in spelling, punctuation or abbreviation) to "Katherine Cook to Ellen C. Hirt"; and for tax years "1977–78" to "1981–82" taxes were assessed to "Hirt, Ellen C."

In addition, defendants note that the deed to Pierson in 1883 described the borders of the Pierson Property with reference to "lands formerly of Lodowick H. Cook":

North by lands of Oliver Halsey and E. Jones Ludlow East by lands of said Ludlow of John A. Sandford and James L. Sandford, *South by the highway and lands formerly of Lodowick H. Cook, and West by lands formerly of said Cook* and coming to a point at a large hole of open water in the Killis Pond Swamp....

Pellicane Aff., App. A, at 2 (emphasis added). The "lands formerly of Lodowick H. Cook," according to defendants, is a reference to Cook Farm, which, in 1876, had been devised by Lodowick H. Cook to his sons, Augustus L. Cook and Samuel L. Cook. The 1856 deed from Sarah Ludlow and Albert Ludlow to Haines similarly referenced the southern and western borders as "Land of Lodowick H. Cook":

[P]arcel of land situated in Mecox ... containing Twenty–Seven Acres ... and bounded ... *South by the highway and Land of Lodowick H. Cook and West by the Land of Lodowick H. Cook* and coming to a point at a large open hole of water in Killis Pond Swamp....

*Id.* App. A, at 1 (emphasis added). Similarly, and consistent with Lodowick H. Cook's devise of Cook Farm to his sons in 1876, the 1878 deed from Haines to Edward Hildreth described those borders as "lands formerly of Lodowick H. Cook":

*South by the highway and lands formerly of Lodowick H. Cook, and West by lands formerly of said Cook* and coming to a point at a large hole of open water in the Killis Pond Swamp....

*Id.* App. A, at 1–2 (emphasis added).

Moreover, defendants urge that it is inconceivable that Samuel P. Hildreth would have acted as attorney to probate Samuel L. Cook's will, which transferred a one-half interest in Cook Farm to the other one-half owner [*i.e.*, Augustus L. Cook], if he and George H. Hildreth were the sole owners of the Subject Property as plaintiff maintains, *see* Amended Complaint ¶¶ 110–11; Wagner Aff. Exh. 95, at 2. Plaintiff offers no explanation for this circumstance.

As for conveyances by Pierson prior to his death, defendants attach certified copies of pages from the deed libers for Suffolk Coun-

ty demonstrating that Pierson deeded *26.93 acres* of property from October 1886 to January 1891. *See* Wagner Aff. Exhs. 59, 60, 82, 83, 84 and 92. The dates, grantees and acreage of these deeds were as follows:

| Date | Grantee | Acreage |
| --- | --- | --- |
| October 4, 1886 | Mary D. Edwards | 3.75 |
| October 4, 1886 | Oscar D. Edwards | 3.75 |
| August 15, 1987 | Edward H. Foster | 6 |
| December 20, 1887 | George M. King | 2 |
| January 9, 1889 | George King | 4 |
| January 7, 1891 | George M. King | 7.43 |

Defendants maintain that these six deeds conveyed the approximately 27 acres deeded to Pierson in 1883. Further, defendants maintain, according to their analysis of these deeds, that all of these parcels bordered Cook Farm—except the six acres deeded to Edward H. Foster—thereby demonstrating that the Pierson Property was not the Subject Property.

Integral to defendants' position is the following recitation in the deed, dated August 15, 1887, from Pierson to Edward H. Foster (the "Pierson/Foster deed"), apparently indicating that this six-acre parcel was part of the approximately 27 acres deeded to Pierson in 1883:

> The above described and conveyed tract [*i.e.*, the six acres] is a portion of the 35 acres of land called Jeremy's Lot sold by the Executors of George Landford, dec'd (who bought the same of Jeremiah Halsey) to Elias Ludlow, Oct. 5th, 1814, deed filed in County Clerk's Office Aug. 10th, 1887— *twenty-seven acres of the same deeded by the heirs of Elias Ludlow to James L. Haines, March 6th, 1856*, recorded Liber 87 of Deeds, page 483, May 26th, 1856; *Same parcel sold by Jas. L. Haines, Feb. 8th, 1881 to Edward A. Hildreth*, recorded Liber 252 of Deeds, page 456, March 3d, 1881, *sold by Hildreth to Charles A. Pierson Jan. 29th, 1883*, recorded Liber 271 of Deeds page 589, Feb. 20th, 1883.

*Id.* Exh. 92 (emphasis added). According to defendants' analysis of the six deeds, the 13.43 total acres deeded to George M. King were located directly east of Cook Farm, separated from Cook Farm by a "new highway," as identified in those deeds; the six acres deeded to Foster was located even further east of Cook Farm, as it bordered the east boundary of the 7.43 acre-parcel

deeded to King. According to defendants, the "new highway" is now known as Halsey Lane, which is the east boundary of the Subject Property. The remaining two parcels were located north of Cook Farm, on the same side of the "new highway" as Cook Farm. The deed to the 3.75 acres to Oscar B. Edwards, dated October 4, 1886, provided that that parcel was bounded

> East by the new highway leading south from the Methodist Church; South by land of Augustus L. Cook & Samuel L. Cook; & West by land of the same persons.

*Id.* Exh. 60. The deed to the 3.75 acres to Mary D. Edwards, also dated October 4, 1886, provided that that parcel was bounded

> East by a new highway running south from the Methodist Church; South by land of said Charles A Pierson this day conveyed to Oscar B. Edwards; & West by land of Samuel L. & Augustus L. Cook.

*Id.* Exh. 59. Thus, the 3.75 acres deeded to Mary D. Edwards was located to the immediate north of the 3.75 acres deeded to Oscar B. Edwards.

Plaintiff claims in his deposition that he first became aware that he had a claim to the Subject Property in March 1992. He admits that he has never been in possession of, paid taxes on, obtained insurance for, or leased to others, the Subject Property. He also admits that he is not aware of whether his parents ever paid taxes on the property. He further admits that he observed that hay was grown and harvested on the land from at least the 1940's through the 1970's, and that he was aware the property was being developed to residential housing from the started of development "in the 80's." Wagner Aff. Exh. 96. Plaintiff claims not to know whether his predecessors in interest were ever in possession of the Subject Property, *see* Plaintiff's Statement Pursuant to Civil Rule 3(g), ¶ 5, but concedes that "[Augustus L.] Cook farmed the land.... This land was open, potato farmland without fences or buildings. Old aerial photos indicate a typical Long Island farm landscape ...," Pellicane Aff. ¶¶ 26, 31. However, plaintiff's attorney notes that Pierson's wife, Ellen C. Pierson, was Augustus L. Cook's and Samuel L. Cook's sister, and that Hirt testified in her deposi-

tion that the families were friendly; from these facts, plaintiff's attorney suggests, although he admits plaintiff has no proof, that Pierson "may have rented the 27 acres to his brothers-in-law Samuel L. Cook and Augustus L. Cook" or "permitted [Augustus L.] Cook to farm the parcel." Pellicane Aff. ¶¶ 18, 25–31, 35. Nevertheless, plaintiff's attorney asserts that "[d]efendants' possession was never hostile or adverse. Not at its inception; not at any time subsequent thereto." *Id.* ¶ 29.

## II. *DISCUSSION*

A party seeking summary judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donohue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party may not rest on mere allegations or denials of the nonmoving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

■ Plaintiff bears the ultimate burden of establishing his title to the Subject Property. *Town of North Hempstead v. Bonnor,* 77 A.D.2d 567, 429 N.Y.S.2d 739, 740 (2d Dep't),

*appeal denied,* 51 N.Y.2d 707, 433 N.Y.S.2d 1027, 414 N.E.2d 402 (1980). Defendants' submissions support a finding that the Pierson Property did not overlap the Subject Property, and that Pierson conveyed, prior to his death, the approximately 27 acres deeded to him in 1883. If plaintiff is unable to raise a genuine issue of material fact as to either of these issues, his action fails.

Integral to plaintiff's position is his claim that Pierson did not convey any of the Pierson Property. Plaintiff supports this claim by his attorney's affidavit, wherein his attorney states:

> Defendants would argue that some of the conveyances made by Pierson during his lifetime conveyed out the area received by him by the Pierson deed [*i.e.,* the deed by Edward Hildreth and Harriet Hildreth to Pierson in 1883].

> I disagree with Defendants' expert, Wagner, and will testify at trial.

.    .    .    .    .

> The Plaintiff's expert ... will testify that ... the descriptions in the 6 Pierson deeds which Defendants contend conveyed out the 27 acres, conveyed out land located elsewhere.

.    .    .    .    .

> The land was not conveyed by Charles A. Pierson during his lifetime. This is an issue of fact to be decided at the trial, after testimony from expert witnesses.

> Through the testimony at the trial, I will clearly show the descriptions in the deeds recited by Wagner in Paragraph 129, cover real property situated elsewhere than the site of the real property conveyed into Charles A. Pierson by the 1883 deed.

Pellicane Aff. ¶¶ 22–23, 57. In addition, plaintiff submits an affidavit of a proposed expert, Kenneth H. Beckman ("Beckman"), a licensed professional land surveyor, who opines in conclusory terms that he has examined the deed into Pierson in 1883 and has determined "that the 27 acres described therein are situated on the same property on which is filed the 'Map of Cook Estates.'" Affidavit of Kenneth H. Beckman in Support of Plaintiff's Opposition to Defendants' Mo-

tion for Summary Judgment ("Beckman Aff.") ¶ 2. Beckman further opines that "the land described in those deeds [presumably referring to the deeds by which defendants contend Pierson conveyed the 27 acres prior to his death] covers land other than the acreage which was described in the said deed to Pierson, with the *possible* exception of the deed into Foster." Beckman Aff. ¶ 3 (emphasis added).

As to whether the Pierson Property and Subject Property overlap, plaintiff supports his position by the following statement by his attorney:

I have personally examined the chains of title to land in the area in question and believe that the chain of title into the Plaintiff clearly covers the real property which is the subject of this action....

Pellicane Aff. ¶ 13. Plaintiff also offers the following opinion by Beckman:

I have examined the description in the deed into [Pierson in 1883] and have determined, to a degree of reasonable certainty, that the 27 acres described therein are situated on the same property on which is filed the "Map of Cook Estates.

Beckman Aff. ¶ 2. Neither plaintiff's attorney nor Beckman offers an explanation or basis for their opinions.

Upon consideration, plaintiff's opposition is not sufficient to raise a genuine issue of material fact warranting a trial as to whether Pierson conveyed, prior to his death, the 27 acres deeded to him in 1883. Plaintiff offers no basis or explanation for his attorney's and proposed expert's conclusions that these six deeds "conveyed out land located elsewhere," but relies on their unsubstantiated conclusions. Interestingly, while plaintiff's attorney states unequivocally that none of the 27 acres was conveyed by Pierson, Beckman admits that it is "possible" the Pierson/Foster deed conveyed a portion of the 27 acres. Beckman Aff. ¶ 3. In opposing these summary judgment motions, plaintiff "cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial." *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972). Nevertheless, plaintiff offers no explanation or "specific facts" to support his contention that the

six-acre parcel conveyed to Edward H. Foster was not part of the approximately 27 acres deeded to Pierson in 1883 or to show where the property in the six conveyances by Pierson were located in relation to the Subject Property. In light of the evidence submitted by defendants, a rational trier of fact could not find for plaintiff based on plaintiff's submissions.

Similarly, plaintiff's attorney's and proposed expert's conclusory assertions that the Pierson Property was situated on the same property as the Subject Property, in light of the evidence submitted by defendants, are not sufficient to raise a genuine issue of material fact as to whether the Pierson Property overlapped the Subject Property.

■ Alternatively, assuming that the Pierson Property was located at the Subject Property and that Pierson did not convey the Pierson Property prior to his death, this Court finds that plaintiff fails to raise a genuine issue of material fact as to defendants' adverse possession counterclaims. To acquire. title by adverse possession, the claimant must prove, through clear and convincing evidence, that the possession was "hostile and under claim of right, actual, open and notorious, exclusive and continuous." *Brand v. Prince,* 35 N.Y.2d 634, 364 N.Y.S.2d 826, 828, 324 N.E.2d 314 (1974); *Van Valkenburgh v. Lutz,* 304 N.Y. 95, 98, 106 N.E.2d 28 (1952); *Belotti v. Bickhardt,* 228 N.Y. 296, 302, 127 N.E. 239 (1920); *Risi v. Interboro Industrial Parks, Inc.,* 99 A.D.2d 466, 470 N.Y.S.2d 174, 175 (2d Dep't 1984); *Mastin v. Village of Lima,* 86 A.D.2d 777, 448 N.Y.S.2d 274, 275 (4th Dep't 1982). "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period." *Brand,* 364 N.Y.S.2d at 828, 324 N.E.2d at 315. The prescriptive period is 20 years for those whose possession commenced prior to September 1, 1932; 15 years for those whose possession commenced on or after September 1, 1932 and prior to September 1, 1963; and 10 years for those whose possession commenced on or after September 1, 1963. *See, e.g., Belotti,* 228 N.Y. at 302; *City of Tona-*

*wanda v. Ellicott Creek Homeowners Ass'n*, 86 A.D.2d 118, 449 N.Y.S.2d 116, 118 (4th Dep't 1982); *Brooks v. Anderson*, 82 A.D.2d 531, 442 N.Y.S.2d 133, 135–36 (2d Dep't 1981). However, a claimant in possession for less than the prescriptive period may tack his possession to a predecessor's possession to satisfy the applicable period. *See Brand*, 364 N.Y.S.2d at 829, 324 N.E.2d at 316. Defendants claim that their possession and that of their predecessors satisfies all of the requirements for adverse possession.

■ Defendants' submissions satisfy the requirements that their possession and that of their predecessors was actual and open and notorious during the prescriptive period. Under New York law, for purposes of adverse possession, land is deemed possessed and occupied where, *inter alia*, "it has been usually cultivated or improved." *See* RPAPL § 512 (applied to adverse possession under claim of title founded upon a written instrument); RPAPL § 522 (applied to adverse possession under claim of title not founded upon a written instrument). The type of "cultivation and improvement" that is sufficient to satisfy the statute will vary with the character, condition, location, and potential uses for the property, and need only be consistent with the nature of the property so as to indicate exclusive ownership. *Birnbaum v. Brody*, 156 A.D.2d 408, 548 N.Y.S.2d 691, 692 (2d Dep't 1989); *City of Tonawanda*, 449 N.Y.S.2d at 120. The evidence demonstrates that defendants and their predecessors openly farmed the land from 1921 to approximately 1982 or 1983 and thereafter developed it to residential housing. Plaintiff offers no evidence to controvert defendants' showing as to these elements. Rather, he admits that he observed farming from at least the 1940's through the 1970's and development to residential housing in the 1980's, and concedes that the land was "open, potato farmland ... a typical Long Island farm landscape," Pellicane Aff. ¶ 31, indicating that this use was "consistent with the nature of the property" and open· and notorious. Accordingly, plaintiff's submissions do not raise a genuine issue of material fact as to whether the possession was actual and open and notorious.

Defendants' submissions also satisfy the elements that possession be exclusive and continuous. The record supports defendants' claim that the Cooks or their lessees farmed and maintained the Subject Property, as part of Cook Farm, exclusively and continuously from at least 1921 to approximately 1982 or 1983; and thereafter the property was developed to residential housing and ultimately conveyed to and possessed by the defendant owners. The possession of the defendant owners, when tacked to that of their predecessors, easily satisfies the longest possible prescriptive period, *i.e.*, 20 years. Plaintiff does not contest that the defendant owners have been in exclusive and continuous possession, and admits that the defendant owners' predecessors were in possession of the property. Rather, he suggests that "[n]o one knows whether the Hirt possession was exclusive of the Plaintiff's predecessors, and [defendants' claim that it was] is not provable," Plaintiff's Statement Pursuant to Civil Rule 3(g), ¶ 5; accordingly, he offers no evidence to show that plaintiff's predecessors ever possessed the Subject Property. In light of the evidence submitted, plaintiff's conclusory statement that these elements are "not provable" is not sufficient to raise a genuine issue of material fact as to these elements.

■ As for the final requirement, *i.e.*, that possession must be "hostile and under claim of right," defendants urge that if the claimant proves the other four requirements for adverse possession then hostile possession is presumed and the burden shifts to the purported record owner to produce evidence to rebut that presumption. *See Levy v. Kurpil*, 168 A.D.2d 881, 564 N.Y.S.2d 556 (3d Dep't 1990), *appeal denied*, 77 N.Y.2d 808, 570 N.Y.S.2d 489, 573 N.E.2d 577 (1991); *Sinicropi v. Town of Indian Lake*, 148 A.D.2d 799, 538 N.Y.S.2d 380, 381 (3d Dep't 1989); *City of Tonawanda*, 449 N.Y.S.2d at 119. However, defendants fail to cite New York law holding that where the claimant and purported record owner have a familial or close relationship, no presumption of hostility

arises.[8] *See, e.g., Turner v. Baisley,* 197 A.D.2d 681, 602 N.Y.S.2d 907, 908–09 (2d Dep't 1993); *cf. Wechsler v. New York State Dep't of Environmental Conservation,* 193 A.D.2d 856, 597 N.Y.S.2d 507, 510 (3d Dep't) (proponent of easement by prescription not accorded benefit of presumption of hostility where user and landowner are "related by blood or part of a select group of friends"), *appeal denied,* 82 N.Y.2d 656, 602 N.Y.S.2d 805, 622 N.E.2d 306 (N.Y.1993); *Cannon v. Sikora,* 142 A.D.2d 662, 531 N.Y.S.2d 99, 100 (2d Dep't 1988) (existence of neighborly relationship between the parties and/or their respective predecessors in title may create an implication that the use of the disputed property was permissive rather than hostile), *appeal denied,* 74 N.Y.2d 615, 549 N.Y.S.2d 960, 549 N.E.2d 151 (N.Y.1989). For example, in *Turner,* the Appellate Division, Second Department, stated:

> While it is true that the element of "hostile use" under a claim of right may be presumed if the other elements have been proven, "where it is shown that the user and the landowner are related by blood ... the proponent is not accorded the benefit of the presumption," and the onus remains on the proponent to come forward with evidence of hostile use sufficient to raise a triable issue of fact.

*Turner,* 602 N.Y.S.2d at 908–09 (quoting *Wechsler,* 597 N.Y.S.2d at 510; citation omitted). In circumstances where the "possession is permissive in its inception, adverse possession will not arise until there is a distinct assertion of a right hostile to the owner and brought home to him." *Shandaken Reformed Church of Mount Tremper v. Leone,* 87 A.D.2d 950, 451 N.Y.S.2d 227, 229 (3d Dep't), *appeal denied,* 57 N.Y.2d 602, 454 N.Y.S.2d 1027, 439 N.E.2d 1246 (1982); *Risi,* 470 N.Y.S.2d at 176.

As noted above, plaintiff points out the familial and close relationship between Pierson and his wife (Ellen C. Pierson) and Augustus L. Cook and Samuel L. Cook, and asserts that Pierson *"may* have rented the 27 acres to his brothers-in-law Samuel L. Cook and Augustus L. Cook" or "permitted [Augustus L.] Cook to farm the parcel." Pellicane Aff. ¶¶ 18, 28, 35 (emphasis added). Even if defendants are not accorded the benefit of the presumption of hostility (because of the relationship between defendants' predecessors and plaintiff's predecessors) or even assuming that Pierson gave permission to Augustus L. Cook and/or Samuel L. Cook to farm the land or rented the land to them, defendants have submitted evidence of "a distinct assertion of a right hostile to the owner and brought home to him" as early as 1921. At that time, according to plaintiff, the Subject Property was owned by Samuel P. Hildreth and George H. Hildreth. *See* Amended Complaint ¶¶ 110–11; Wagner Aff. Exh. 95, at 2. During that year, Samuel L. Cook purported to devise his one-half interest in Cook Farm, on which the Subject Property is located, to his brother Augustus L. Cook (the purported owner of the other one-half interest in Cook Farm). As defendants have shown, Samuel P. Pierson was the attorney who probated Samuel L. Cook's will. *See* Wagner Aff Exh. 18. As noted above, defendants urge that it is inconceivable that Samuel P. Hildreth would have acted as attorney to probate a will transferring a one-half interest in property encompassing property he allegedly owned, and plaintiff offers no explanation for this circumstance. Significant for present purposes, however, is that Samuel P. Hildreth was put on notice of "a distinct assertion of a right hostile" to his ownership of the Subject Property by defendants' predecessors in interest.[9] Notice to Samuel P. Pierson, one of plaintiff's predecessors in interest in the Subject Property, is binding on plaintiff. Plaintiff's attorney's conclusory assertion that "[d]efendants' possession was never hostile or adverse," Pellicane Aff. ¶ 29, is not sufficient to raise a genuine issue of material fact as to whether possession was hostile for the prescriptive period. Because plaintiff does not offer evidence sufficient to raise a genuine issue of

---

**8.** Just as interesting, plaintiff does not cite cases for this principle. Rather, plaintiff simply agrees with defendants' recitations of applicable law.

**9.** Interestingly, Samuel P. Pierson was also the attorney to probate Augustus L. Cook's will following the latter's death in 1931, although, by that time, Samuel P. Pierson was no longer an owner of the Pierson Property.

material fact as to whether possession was hostile for the prescriptive period, defendants have also satisfied this requirement.

Accordingly, plaintiff fails to raise a genuine issue of material fact as to any of the elements of defendants' adverse possession counterclaims.[10]

### III. *CONCLUSION*

For the reasons above, defendants' motions for summary judgment are granted. Accordingly, the moving defendants are

awarded judgment on their counterclaims based on adverse possession, and plaintiff's amended complaint is dismissed as to them.

SO ORDERED.

---

**10.** Although defendants raise a statute of limitations defense in their answers, they have not urged this defense in these motions. In any event, this Court finds that plaintiff's action is barred by any conceivably applicable statute of limitations. Based on the record presented, the statute of limitations began to run as early as 1921, when Samuel P. Hildreth, as discussed above, was put on notice of an adverse claim against his property by defendants' predecessors in interest. Thus, plaintiff is charged with allowing over 70 years to pass before bringing this action for a determination of his claim to the Subject Property, clearly longer than any conceivably applicable statute of limitations.