■ NICHOLAS J. BARRA et al., Appellants, v NORFOLK SOUTHERN RAILWAY COMPANY, Respondent. [907 NYS2d 70]—

Garry, J. Appeal from an order of the Supreme Court (Mulvey, J.), entered September 14, 2009 in Tompkins County, which, among other things, granted defendant's motion for summary judgment dismissing the complaint.

Plaintiffs are owners of properties on the eastern shore of Cayuga Lake in the Town of Lansing, Tompkins County, in an area that is bounded to the west by the lake and to the east by railroad tracks owned by defendant. For decades, three at-grade railroad crossings were located within an approximately 825-foot span of defendant's railroad tracks adjacent to the area, part of which is known as Ladoga Park; however, in March 2008, defendant closed the middle crossing (hereinafter the Northern Crossing). Plaintiffs thereafter commenced this action asserting that they enjoyed an express easement for ingress and egress to their properties over the Northern Crossing, that they acquired a prescriptive easement for ingress and egress over the Northern Crossing, or that an easement by estoppel existed for their benefit at the site of the Northern Crossing. Defendant answered and asserted a counterclaim for a declaration that plaintiffs lack an easement at the Northern Crossing. Thereafter, defendant moved for summary judgment dismissing the complaint against it in its entirety. Plaintiffs opposed defendant's motion and cross-moved for summary judgment on their claim for a prescriptive easement. Supreme Court granted defendant's motion, denied plaintiffs' cross motion and dismissed the complaint in its entirety. Plaintiffs appeal.[1]

As always, "[t]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *accord Rought v Price Chopper Operating Co., Inc.*, 73 AD3d 1414, 1414 [2010]) and "[o]ur function on a summary judgment motion is to view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference, and determine whether there is any triable issue of fact outstand-

---

1. As plaintiffs failed to raise any argument with respect to their easement by estoppel claim, we find any issues with respect thereto to be abandoned (*see Deshields v Carey*, 69 AD3d 1191, 1192 n 1 [2010]).

ing" (*Boyce v Vazquez*, 249 AD2d 724, 726 [1998]; *see Barlow v Spaziani*, 63 AD3d 1225, 1226 [2009]; *Boston v Dunham*, 274 AD2d 708, 709 [2000]). We turn first to plaintiffs' claim that the easement was created by express grant in the deed conveying the railroad property from John Henry Myers—plaintiffs' predecessor in interest—to the Cayuga Lake Railroad Company—defendant's predecessor in interest—in the 1870s (hereinafter the Myers deed). The existence of an express easement "depends upon the language of the instrument itself" (*Wechsler v New York State Dept. of Envtl. Conservation*, 193 AD2d 856, 858 [1993], *lv denied* 82 NY2d 656 [1993]), so we begin our analysis with the Myers deed. This deed requires that the purchaser "put in three farm crossings over [its] track and one pass suitable for sheep under [its] track at some convenient point between the barn and the creek."[2] We agree with plaintiffs that the proper construction of this passage mandates placement of only the "pass suitable for sheep" at a "point between the barn and the creek," and does not limit the placement of the three farm crossings to that location. This more natural reading gives meaning to each portion of the passage without creating any internal dissonance, while the alternative construction advanced by defendant—that the three farm crossings and the pass suitable for sheep were all to be placed at a "point between the barn and the creek"—creates undesirable internal inconsistencies, i.e., the placement of three farm crossings across the tracks and one sheep pass under the track all at a single "point"; we decline to apply such a forced construction. Consequently, we find that Supreme Court erred in concluding that the language of the deed precluded the Northern Crossing from being one of the expressly granted easements.

Next, we address defendant's motion seeking dismissal of plaintiffs' claim that their use of the Northern Crossing had ripened into a prescriptive easement. To succeed on a prescriptive easement claim, a plaintiff must show that the use of the servient property was open, notorious, continuous and hostile for the prescriptive period; once the other elements of the claim are established, hostility is generally presumed, thus shifting the burden to the defendant to demonstrate that the use was permissive (*see Barlow v Spaziani*, 63 AD3d at 1226; *Weir v Gibbs*, 46 AD3d 1192, 1193 [2007]; *McNeill v Shutts*, 258 AD2d

---

2. Defendant has accepted plaintiffs' typed transcription of the handwritten deed.

695, 696 [1999]).[3] In this regard, permission may be inferred where the relationship between the dominant and servient estates evinced "neighborly cooperation and accommodation" (*Allen v Mastrianni*, 2 AD3d 1023, 1024 [2003]; *see Barlow v Spaziani*, 63 AD3d at 1227; *Weir v Gibbs*, 46 AD3d at 1193) and, "[w]here permission can be implied from the beginning, no adverse use may arise until the owner of the servient tenement is made aware of the assertion of a hostile right" (*Susquehanna Realty Corp. v Barth*, 108 AD2d 909, 910 [1985]; *see Sleasman v Williams*, 187 AD2d 852, 853 [1992]; *Jansen v Sawling*, 37 AD2d 635, 636 [1971]; *Moore v Day*, 199 App Div 76, 86 [1921], *affd* 235 NY 554 [1923]).

There is no genuine disagreement that plaintiffs' uses of the Northern Crossing were open, notorious and continuous for the prescriptive period; the dispute centers upon the question of hostility. On its motion, defendant has attempted to disprove plaintiffs' hostile use of the easement by demonstrating that the use was permissive. Defendant does not assert that permission was ever expressly granted; consequently, to succeed on its motion, defendant had the burden of establishing implied permission. Generally, the question of implied permission is one for the factfinder to resolve (*see generally Country-Wide Ins. Co. v National R.R. Passenger Corp.*, 6 NY3d 172, 178-179 [2006]; *Barlow v Spaziani*, 63 AD3d at 1227) and, therefore, the vast majority of appellate cases addressing this issue in the context of a prescriptive easement claim have done so on appeals following trials (*see e.g. Weir v Gibbs*, 46 AD3d at 1193; *Duckworth v Ning Fun Chiu*, 33 AD3d 583 [2006]; *McNeill v Shutts*, 258 AD2d at 695-696; *Sleasman v Williams*, 187 AD2d at 852-853; *Susquehanna Realty Corp. v Barth*, 108 AD2d at 909-910; *Hassinger v Kline*, 91 AD2d 988 [1983]; *Jansen v Sawling*, 37 AD2d at 635). The rare case in which implied permission is established on summary judgment normally involves irrefutable proof of "a history of cooperation and accommodation," such as an admission of that fact by a party seeking the prescriptive easement (*Allen v Mastrianni*, 2 AD3d at 1024), or a circumstance under which a prevailing presumption in favor of permissive use is invoked, such as where the parties are "related by blood or part of a select group of friends" (*Wechsler v New York State Dept. of Envtl. Conservation*, 193 AD2d at 860). Neither scenario is presented here.

---

**3.** To establish a prescriptive easement at trial, a plaintiff must prove these elements by clear and convincing evidence (*see McNeill v Shutts*, 258 AD2d at 696). However, as this appeal arises from a motion for summary judgment, the ultimate burden of proof after trial plays no part in the assessment of whether there are relevant factual issues presented.

In support of its motion, defendant relies on the apparent business relationships between it and its predecessors and certain prior owners of the parcel directly adjacent to the railroad track at or near the site of the disputed crossing (presently owned by plaintiff William Burin and hereinafter referred to as the Burin parcel), as evidenced by the installation by defendant or its predecessors in interest of a "siding" at the Burin parcel and the historic use of that parcel in coal, gravel and/or cement businesses. While this may adequately demonstrate that prior owners of the Burin parcel made use of the railroad tracks for transportation of materials by rail, it reveals nothing about the use of the Northern Crossing for traversing the railroad tracks by automobile. Additionally, affidavits from three long-time residents of the area variously asserting that, during a vaguely-defined period from approximately the 1940s to the 1960s, they recalled customers of the business or businesses operating on the Burin parcel using the Northern Crossing, fail to sufficiently fill the gaps in defendant's proof to establish defendant's entitlement to summary judgment as a matter of law. Accordingly, we find that defendant failed to make the necessary showing that permission could be " 'implied from the beginning' " (*Sleasman v Williams*, 187 AD2d at 853, quoting *Susquehanna Realty Corp. v Barth*, 108 AD2d at 910) and, as reasonable inferences can be drawn in plaintiffs' favor from the evidence proffered by defendant (*see Boyce v Vazquez*, 249 AD2d 724, 726 [1998], *supra*), summary judgment in defendant's favor on the issue of the prescriptive easement claims was inappropriate (*see Barlow v Spaziani*, 63 AD3d at 1227).[4]

Finally, as this matter is being remitted for trial, we will address the issue of the application of the 2008 amendments to the RPAPL (*see* L 2008, ch 269) to plaintiffs' prescriptive easement claims.[5] These amendments, which took effect on July 7, 2008, "apply to claims filed on or after such effective date" (L 2008, ch 269, § 9) and, as alleged in plaintiffs' March 2009 complaint, plaintiffs' prescriptive periods all commenced and concluded prior to the effective date.[6] Although a creature of common law, the right to an easement by prescription, as with

4. In light of our conclusion, we express no opinion as to whether a mutually beneficial business relationship can be viewed as "neighborly cooperation or accommodation" so as to support a conclusion of implied permission.

5. It is well settled that statutory changes affecting the law of adverse possession concomitantly alter the common-law doctrine of prescriptive easement because of "the strong analogy between the two rules" (*Klin Co. v New York R.T. Corp.*, 271 NY 376, 380 [1936]).

6. Defendant had barricaded the crossing prior to the effective date of the amendments.

adverse possession, vests upon the expiration of the statute of limitations for the recovery of real property (*see Scallon v Manhattan Ry. Co.*, 185 NY 359, 363 [1906]; *see also* CPLR 212 [a]; RPAPL 501 [2], as amended by L 2008, ch 269, § 1). Should plaintiffs succeed in proving their claims, titles to the easement would have vested prior to the effective date of the amendments and, consequently, "[they] may not be disturbed retroactively by newly-enacted or amended legislation" (*Franza v Olin*, 73 AD3d 44, 47 [2010]; *see Baker v Oakwood*, 123 NY 16, 29-30 [1890]). Accordingly, notwithstanding the statutory language to the contrary, at trial, plaintiffs are entitled to have their claims measured in accordance with the law of prescription as it existed prior to the enactment of the 2008 amendments.

Cardona, P.J., Rose, Stein and McCarthy, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted that portion of defendant's motion for summary judgment dismissing the first and second causes of action; motion denied to that extent; and, as so modified, affirmed.