ARNOLD ANNUNZIATA et al., Respondents-Appellants, v
THERESA COLASANTI et al., as Executors of CONCETTA
COPPOLA, Deceased, Appellants-Respondents.

First Department, March 3, 1987

### APPEARANCES OF COUNSEL

*Katherine R. O'Brien* of counsel *(Thomas G. Vaughan* with her on the brief; *Jones Hirsch Connors & Bull,* attorneys), for appellants-respondents.

*Paul F. McAloon* of counsel *(Mangiatordi & Corpina,* attorneys), for respondents-appellants.

### OPINION OF THE COURT

SULLIVAN, J. P.

On August 14, 1982, plaintiff Arnold Annunziata and his wife, who asserts a derivative cause of action herein, together with their three young children, were guests at a family barbecue in the backyard of 2434 Eastchester Road, in The Bronx. The premises were maintained by the deceased owner's son and daughter, Theresa Colasanti and Frank Coppola, who lived in the house next door and who, as executors of their mother's estate, are the defendants in this action.

Sometime that afternoon, plaintiff placed one of his children in a swing which hung from a tree in the backyard, just to the side of a two-foot-wide concrete walk. The swing had been hung by Coppola, who, apparently, had assumed the responsibility for the upkeep of the premises. Unbeknownst to plaintiff, just two feet behind him, on the other side of the walk was a 42-inch-deep, 30-inch-wide, sewer trap, which, as conceded by defendants at trial, constituted an inherently dangerous condition. The trap had a wooden cover.

As plaintiff pushed the child, and as the arc of the swing extended higher, he stepped back onto the wooden cover, which suddenly gave way, plunging him into the sewer trap, and causing him to suffer a fracture of the right ankle. He thereafter commenced this action to recover for that injury.

At trial, plaintiff and his witnesses described the trap covering as a thin, warped piece of rotted plywood. Two pictures of the open trap taken the day after the accident and depicting broken pieces of rotting wood inside the hole were admitted in evidence as exhibits 2A and 2B, respectively. Based on his viewing of these exhibits, plaintiff's expert, a consultant safety engineer, described the covering as three-

quarter-inch interior plywood, a type normally used to provide a smooth surface to which shingles or tiles could be affixed. In his opinion, plywood was an inadequate cover for a sewer trap since moisture would accumulate in the trap and cause the plywood to rot. According to the expert, the plywood used here had been exposed to weather conditions for a substantial period of time, at least a year, possibly 14 months, as evidenced by its having separated into three distinct, visible layers. As he explained, the accumulation of moisture softens the glue binding the layers of wood and causes the plies to separate, substantially reducing the strength of the plywood. A routine visual inspection conducted within at least nine months of the accident would have revealed the condition of the cover.

Plaintiff's expert testified that the use of any type of wood covering for a sewer trap would be inadequate, given wood's propensity to rot when exposed to moisture. The standard accepted by the American Association of Contractors and Builders, an organization of contractors which sets industry standards, calls for the use of a metal cover. Plaintiff's expert also testified to the availability to homeowners of an inexpensive reinforced fiberglass cover that would withstand exposure to moisture.

The defense was based entirely on Coppola's testimony. He testified that the trap, part of the house's plumbing system since its construction approximately 60 years before, prevented clogging in the pipes. When debris collected in the pipe situated at the bottom of the trap, Coppola would flush it out.

In describing his efforts to cover the trap, Coppola summoned up a diversity of purported recollections. At first, he insisted that the hole was covered with "scaffold, like planks, building construction planks with tabletop stainless steel tabletop". He later corrected his answer to state that the tabletop was porcelain, not steel. Coppola described the cover as consisting of four planks, each 3½ feet long and 8 to 10 inches wide, laying side by side across the 30-inch-wide hole. After some inconsistencies with his testimony at his examination before trial as to the number of planks and their dimensions were pointed out, Coppola was confronted with exhibits 2A and 2B. He conceded that both pictures depicted the trap as he had observed it on the day after the accident. He, nevertheless, insisted that the trap was covered with scaffolding planks which he had taken from a construction site where

he worked, and not plywood, and by a kitchen tabletop, 36 inches by 30 to 36 inches.

Coppola also recalled having replaced one of the planks in the trap cover in the spring of 1982. When confronted again with his pretrial examination in which he had testified that he had changed all of the planks, Coppola stated that he had changed them all. After being questioned about these discrepancies, the following transpired:

"Q. I just want to know, were you telling the truth then?

"A. Then.

"Q. So you're lying now?

"A. All right. I'm lying."

Asked whether the boards were two feet long, he stated that they were not. The following ensued:

"Q. Didn't you just testify when Mr. Vaughan asked you a question, didn't you say they were two feet long; isn't that what you said; isn't that what you said?

"A. I misjudged.

"Q. Were you telling the truth then, yesterday or were you telling the truth today, sir? Which is it?

"A. Look—

"Q. I just want to know, were you telling the truth yesterday or were you telling the truth today?

"A. I'm trying to get the right answer.

"Q. Was it yesterday or today?

"A. Today.

"Q. So, you were lying yesterday?

"A. Yes."

The jury returned a verdict in favor of defendants, which plaintiff moved to set aside as contrary to the weight of the credible evidence. Alternatively, he moved for judgment as a matter of law on the issue of liability, which the trial court denied. Finding Coppola's testimony to be incredible, it did, however, set aside the verdict and order a new trial. The parties cross-appealed. Since we find that plaintiff was entitled to judgment as a matter of law on the issue of liability, we modify accordingly and remand for an assessment of damages.

Defendants, through Coppola, were well aware of the dangerous nature of the sewer trap, which, as they conceded at trial, constituted an inherently dangerous condition. That danger was further exacerbated by Coppola, who placed a

child's swing in such a position that persons pushing the swing would inevitably step on the trap cover. Nor was Coppola's awareness of that aspect of the danger a mere abstraction, since he had actually seen persons standing on the cover, pushing the swing. In such circumstances, Coppola was under a duty to fashion a cover capable of supporting the weight of an adult. Thus, the decisive issue upon which liability turned was whether he discharged that duty.

All of the witnesses, except Coppola, testified that the cover was made of thin plywood which had rotted. The condition of the cover was further proven by exhibits 2A and 2B, which even Coppola accepted as accurately depicting the appearance of the trap immediately after the accident. In light of such concession, Coppola's exculpatory testimony as to the nature and condition of the cover, indeed, all of his testimony, was so manifestly contrived and plainly contradictory as to be incredible. One need look no further than to his astounding claim, made for the first time at trial, that the trap was covered by a metal or porcelain tabletop.

Coppola testified that he had placed wooden planks over the trap and covered them with a metal or porcelain tabletop. Inexplicably, however, despite its significance, he never mentioned the tabletop in his examination before trial. Nor did he ever explain how the pressure of plaintiff's weight could have caused a metal or porcelain tabletop as well as scaffolding planks to give way. Moreover, he failed to offer any reason for covering the entire trap with a tabletop, which is moisture-retaining, after he had allegedly purposely left spaces between the wooden planks specifically to prevent rotting. The photographs of the trap taken the day after the accident stripped Coppola's testimony of any legitimacy it might otherwise have had. They reflect the presence of neither a tabletop nor planks, but rather rotted plywood. As the trial court aptly observed, the pictures show "broken pieces of old wood in a hole". The trial court correctly concluded that such unbelievable testimony by a party—who admitted on the witness stand that he was lying—as to a condition flatly contradicted by photographic evidence could not support a verdict.

On such a record, this case was particularly appropriate for the exercise of the court's discretion in setting aside the verdict. As recently noted in *Nicastro v Park* (113 AD2d 129, 131), a Judge's power to set aside a verdict as against the weight of the evidence is inherent and derives from the judicial system's obligation to protect its integrity against the

taint of a clearly erroneous verdict. Not to be ignored either is the judiciary's concern that a just result attend the disposition of each case. *(Supra,* at 131-132.) The rejection of a verdict which rests on admittedly perjured testimony protects both the societal and individual interest. A verdict should not be set aside unless the jury could not have reached its decision on "any fair interpretation of the evidence". *(Mieuli v New York & Queens County Ry. Co.,* 136 App Div 373, 375; *Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *Tripoli v Tripoli,* 83 AD2d 764, *affd* 56 NY2d 684; *Marshall v Mastodon, Inc.,* 51 AD2d 21, 23.)

The trial court's ruling setting aside the verdict reflects meticulous attention to the facts and "an application of that professional judgment gleaned from the Judge's background and experience as a student, practitioner and Judge" *(Nicastro v Park,* 113 AD2d, at 135). The Judge specifically recorded her observations of Coppola's testimony; she described a hesitant and evasive demeanor, punctuated by long pauses not reflected in the cold transcript. Those observations are appropriate considerations and demonstrate that, particularly in this case, the Trial Judge's presence offered a perspective superior to any which could be gleaned from a reading of the record.

Even without the trial court's perceptive insight into the manner in which Coppola testified, it is clear from the record itself that his testimony was inadequate to support a fair verdict. He contradicted himself with regard to every major assertion he made. His testimony can only be described as incredible in every respect. An appellate court, even without the advantage of having viewed the witnesses, is "not required to give credence to a story so inherently improbable that we are morally certain it is not true." *(Bottalico v City of New York,* 281 App Div 339, 341; *Celani v Interstate Motor Frgt. Sys.,* 30 AD2d 772; *see, Lopez v Union Settlement Assn.,* 25 AD2d 520; *Robinson v Klein,* 21 AD2d 778.) Moreover, it is a well-recognized principle of appellate review that "the trial court's decision to exercise its discretion and order a new trial [is to] be accorded great respect" *(Nicastro v Park,* 113 AD2d, at 137; *see also, Yacano v De Fayette,* 67 AD2d 1059; *McDowell v Di Pronio,* 52 AD2d 749).

A final factor justifying the trial court's setting aside the verdict is the recognition that its discretion in that regard "is at its broadest when it appears that the unsuccessful litigant's evidentiary position was particularly strong compared to that of the victor." *(Nicastro v Park,* 113 AD2d, at 136.) Here, three

lay witnesses and an expert testified that the trap was covered with plywood. The photographs show plywood. Coppola's testimony, in contrast, was worthless. While we are at a loss to explain how the jury arrived at its determination in the light of such testimony and documentary evidence, we have no hesitancy in concluding that its verdict cannot stand.

We go even further, however. Once Coppola accepted exhibits 2A and 2B as being accurate portrayals of the trap on the day after the accident, defendants' negligence was conclusively established and no issue of fact remained on the liability aspect of the case. Defendants never raised any issue as to plaintiff's culpability. In fact, defense counsel conceded that the accident was "not his fault at all". Having correctly set aside the verdict in favor of defendants, the trial court should have taken the additional step of directing judgment in plaintiff's favor on the issue of liability. It should be noted that plaintiff had, at the close of the evidence, moved for a directed verdict on that issue.

The condition of the trap and of the cover, which presented the only liability issue in the case, was undisputed by any credible evidence. When questioned by plaintiff's attorney, Coppola agreed that exhibit 2B showed the trap and one of the pieces of wood which had covered it. Examination of the photograph renders incredible his assertion that the piece of wood was one of three equally sized pieces, each 8 to 10 inches wide, which, if laid side by side, would just cover the trap. Equally incredible is his denial that the wood was not plywood. The photograph clearly shows a piece of plywood that had separated into three distinct warped layers, and which, manifestly, was inadequate to support a person's weight. When photographs of a condition "show, without doubt, that the testimony adduced" by one party as to the condition "is incredible as [a] matter of law", then the opposing party is entitled to a directed verdict. *(Walker v Murray,* 255 App Div 815, *affd* 280 NY 709.)

The Court of Appeals has clearly enunciated the standard for the direction of judgment when the only opposing evidence is incredible. " ' "When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established." ' " *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 246, quoting Maule, J., in *Jewell v Parr,* 13 CB 916.) The mere fact that Coppola took the witness stand and testified did not create an issue of fact,

in view of the incredible nature of that testimony. Thus, the only evidence as to the condition of the cover is the unopposed, dispositive testimony of plaintiff's witnesses. Defendants clearly defaulted in addressing plaintiff's evidence on the efficacy of plywood as a sewer trap cover. Instead, they tendered a defense based on Coppola's utilization of a cover consisting of scaffolding planks and a tabletop overlay. Clearly, as the photographs demonstrate, that was not the case. Thus, plaintiff's evidence on the inadequacy of indoor plywood as a sewer trap cover and its proclivity to rot over a period of time went unchallenged, as did the testimony that this particular piece of plywood had been exposed to weather conditions for at least a year. In such circumstances, defendants were shown to have been negligent,* and plaintiff is entitled to a directed verdict on liability.

Accordingly, the order of the Supreme Court, Bronx County (Karla Moskowitz, J.), entered on April 11, 1986, which, *inter alia,* granted plaintiffs' motion to set aside the verdict as against the weight of the evidence and denied their motion for a directed verdict on liability, should be modified, on the law, to grant plaintiffs' motion for a directed verdict on the issue of liability and to remand the matter for an assessment of damages, and except as thus modified, affirmed, with costs and disbursements.

Ross, Kassal, Ellerin and Wallach, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about April 11, 1986, unanimously modified, on the law, to grant plaintiffs' motion for a directed verdict on the issue of liability and to remand the matter for an assessment of damages and, except as thus modified, affirmed. Plaintiffs-respondents-appellants shall recover of defendants-appellants-respondents $75 costs and disbursements of this appeal and cross appeal.

---

* Defendants argue that the jury could have found that defendant Coppola did not foresee the risk of injury and that he did "what he thought was right and proper". This argument misconceives the issue. The question is not whether a specific defendant actually foresaw the risk or did what he thought was right. The issue is whether a reasonably prudent person should have foreseen the risk and whether defendants exercised the care of a reasonably prudent person. *(Basso v Miller,* 40 NY2d 233, 241.) Coppola's unreasonable inability to foresee danger and his well-intentioned, but unreasonable, behavior do not constitute a defense. *(See generally,* Prosser, Torts, at 149-151 [4th ed 1971].) Such claims are insufficient as a matter of law.