OPINION OF THE COURT
Edwin Margolis, J.
This claim arises out of a fall sustained by the claimant, Danielle Walter, at John Boyd Thacher State Park (Park), in *353 the County of Albany, on April 17, 1985 between 5:30 and 5:45 p.m.[1] The trial was bifurcated and this decision deals only with the issue of liability.
At the time of the incident, claimant was a 19-year-old student at Memorial Hospital School of Nursing in the City of Albany. She and her classmates were attending a picnic which had been organized by the School of Nursing. Claimant and two of her friends drove to the Park, arriving sometime between noon and 12:30 p.m. She parked in the Mine Lot Picnic Area where she and her friends met a group of young men who had come in a van. Claimant testified that they stayed inside the van and talked and drank all afternoon. Claimant stated she took one sip of Seagrams and soda and then switched to beer which had been brought by the young men. She testified that she consumed a total of four cans of beer that afternoon.
Claimant stated that there was a lavatory in the area immediately adjacent to the Mine Lot Picnic Area, but that it was closed at the time. Because there were no open lavatory facilities available in the immediate vicinity, she “went to the bathroom outdoors twice.”[2] The second time claimant left her group to relieve herself was between 5:30 and 5:45 p.m., when it was dusk. She testified that she walked toward a split rail fence which bordered the north side of the picnic area and separated it from a dense wooded area. The fence consisted of 42-inch-high vertical posts placed in the ground approximately every 10 feet apart, with two continuous horizontal narrow rails completing the fence. One rail was attached at the top of the vertical posts and the other at the middle.
Looking toward the wooded area side of the fence from the picnic area side, all that was apparent to the naked eye were dense trees and heavy foliage and dirt path which ran perpendicularly from the fence into the wooded area. The State did not dispute or rebut evidence, including photographs, that it is impossible to see through the trees and foliage sufficiently to realize that the wooded area is actually the top of an approximately 60-foot-high cliff or escarpment. The distance along the dirt path from the fence to the abrupt, and undetectable, edge of the precipice is approximately 30 feet.
*354 There were two small signs — a "Danger” sign and a "Caution” sign — one on top of the other, just above the top rail of the fence facing the picnic area. The signs read as follows:
DANGER
Keep Inside Rail
Watch Your Children
CAUTION
People Walking Below
Do Not Throw
Anything Over Cliff
Claimant climbed over or through the fence and followed the path into the woods. She stopped behind a bush adjacent to the path, proceeded to urinate, and as she did so, slid down the side of the 60-foot-high cliff. She lay there unconscious for several hours, before being found by members of the SaratogaCapital District Search and Rescue Squad of the Department of Parks and Recreation. Claimant’s shoe was found at the end of the path, right at the edge of the top of the cliff, and she, herself, was located near the base of the cliff.
In seeking to recover for the personal injuries thus sustained, claimant asserts that the State failed to give adequate warning of a dangerous latent condition, which was known to defendant but which was completely hidden from claimant, and that the failure to give such adequate warning was the sole proximate cause of her subsequent fall.
In general, landowners have a duty to prevent the occurrence of foreseeable injuries to persons who make use of their land. (See generally, Preston v State of New York, 59 NY2d 997; Basso v Miller, 40 NY2d 233; Scurti v City of New York, 40 NY2d 433.) In Basso, the court adopted the description of this duty which had been articulated in Smith v Arbaugh’s Rest. (469 F2d 97, 100): " 'A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk’ ”. (40 NY2d, supra, at 241.)
Foreseeability is the initial measure of a landowner’s liability for injuries on the premises. (Boltax v Joy Day Camp, 113 *355 AD2d 859, affd 67 NY2d 617; see also, Restatement [Second] of Torts § 343.) Thus, a landowner must adequately warn against a danger if someone "would not discover or realize the peril and guard against it” (Goslin v La Mora, 137 AD2d 941, 942) and must take steps to "prevent those accidents which might foreseeably occur as the result of dangerous terrain” (Diven v Village of Hastings-On-Hudson, 156 AD2d 538, 539). The test is not whether a particular defendant foresaw a particular risk but, rather, "whether a reasonably prudent person should have foreseen the risk and whether defendants exercised the care of a reasonably prudent person” (Annunziata v Colasanti, 126 AD2d 75, 82, n, citing to Basso v Miller, 40 NY2d 233, 241).
When natural geological phenomena pose dangers that are "open and obvious, in contrast to latent”, property owners are not required to enclose them or take other extensive steps to prevent harm from occurring. (Casela v City of Troy, 161 AD2d 991; see also, Diven v Village of Hastings-On-Hudson, 156 AD2d 538, 539, supra; Olsen v State of New York, 30 AD2d 759, affd 25 NY2d 665; Tarricone v State of New York, Ct Cl, Jan. 4, 1990, McCabe, J. [Claim No. 75145].) This does not mean that a landowner will always escape liability because a naturally occurring danger is easily visible and its danger understood.
In Mesick v State of New York (118 AD2d 214), sharp, jagged rocks — visible to observers — were located below a rope which young people illegally used to swing out beyond the rock and jump into a water hole owned by the State. Although the area was posted to prohibit any activities other than fishing and State employees would cut down the "swimming rope” whenever it was noticed, the Third Department nevertheless held the State liable for injuries suffered by a young man who fell onto the rocks while attempting to make use of the rope. "Resolution of the issue of breach of duty requires a factual weighing of the severity of potential injuries against the burden on the landowner to avoid the risk (Kush v City of Buffalo, 59 NY2d 26, 29-30, supra). Here, the potential for severe injuries from a fall from the rope onto sharp, jagged rocks is obvious. Further, the risk could have been avoided by the simple expedient of cutting the tree down. In the face of these facts, the State’s actions in simply posting signs and occasionally cutting down the rope were insufficient to fulfill its duty of care.” (118 AD2d, supra, at 217-218.)
Where, the risk of danger is not apparent to those making *356 use of the property, the landowner’s burden is greater; he must take reasonable steps to warn persons of both the existence of danger and, to the extent required by the circumstances, the nature of the danger being warned against. Thus, in Johnston v State of New York (127 AD2d 980, 981, appeal denied 69 NY2d 611), where State Park users were warned against progressing beyond a certain point on a beach by an extremely large (6 feet, 4 inches by 5 feet) sign which stated " 'Danger — patrons prohibited beyond this point’ ” (supra, at 981), the State was nevertheless held liable for the death of a park visitor who went beyond the sign and was killed by a landslide which occurred without warning. Noting that a paved path which went beyond the sign to the area where the accident occurred and that the park staff "knew both that patrons disregarded the sign and that the bank where the landslide occurred was unstable”, the Fourth Department affirmed the trial court’s holding that the State had failed to use reasonable care. (127 AD2d, supra, at 981.) In that lower court decision, the Trial Judge had found the sign to be "too vague to warn visitors to be on guard against a landslide” and "no evidence that a casual hiker could have observed the danger of a landslide.” (Ct Cl, May 13, 1985, Quigley, J. [Claim No. 65693].)
In contrast, the State was held not to be liable for the death of a visitor to Watkins Glen State Park who was killed by a 16-pound rock which was thrown from the top of the glen’s northern cliff. In Frontz v State of New York (147 AD2d 854, 855, lv denied 74 NY2d 605), the Third Department noted that visitors were expressly warned by signs at the park entrance which read " 'warning — proceed with caution — stay on MAIN TRAILS — KEEP AWAY FROM CLIFF EDGE — BEWARE OF FALLING rocks and loose stone on trail’ ” and other signs on the upper trails cautioning " 'people on trail below — do not throw or kick stones’ ”. The appellate court based its primary reliance on the impossible task that would have been faced by the State if it sought to erect adequate fences or other devices that would fully protect the safety of tourists on lower trails and/or to prevent those on the upper trails from approaching the cliff edge if they were determined to do so. In order for liability to attach, the court stated, "[t]here must be proof, absent here, that the potential danger reasonably could have been neutralized and that its existence was or should have been discovered by the State” (147 AD2d, supra, at 855).
In the case at bar, the court finds that the natural geo *357 graphical phenomena which posed the risk of claimant’s injury was a latent danger which was known to the landowner. The edge of the cliff could not be seen from the fence and the presence of a path, like the paved walkway in Johnston (supra), indicated that, despite the easily scaled fence and the warning sign, the area beyond the fence was routinely traveled. It is true that defendant had erected a sign with prohibited passage beyond the fence and, in addition, warned of the existence of a cliff. The danger alluded to in the sign, however, was that to be faced by persons walking below the cliff. Nothing in the wording of the sign warned that there was a hidden precipice which was wholly obscured by foliage, so that one step could cause a person to plummet downward. While the claimant must be charged with knowing the content of the unobscured warning sign (Johnston v State of New York, 127 AD2d, supra, at 981, citing Weigand v United Traction Co., 221 NY 39, 42), we hold that the warning provided was misleading and insufficient to adequately apprise Park users of the type and degree of danger which they faced if they went beyond the fence. Nor was the fence of such a construction as to form a significant barrier to passage and thus provide additional implicit warning. In related situations, although not necessarily limited to natural conditions which present danger, it has been stated that the duty of due care is a function of, among other things, claimant’s reasonable expectations (Turcotte v Fell, 68 NY2d 432) and that the landowner is responsible for assuring that his property is no more dangerous than it appears to be (Drew v State of New York, 146 AD2d 847; see, Sanders v City Univ., NYLJ, Jan. 28, 1991, at 26, col 2 [Ct Cl, Dec. 21, 1990, Weisberg, J.]). In the case at bar, the warning clearly did not inform the general public that the area beyond the fence was significantly "more dangerous than it appeared to be”. In fact, by warning of one danger (to persons walking below) and not of another (to persons walking in the foliage on top of the cliff), the sign may very well have lulled a casual patron into complacency.
Furthermore, under the existing circumstances, we find it foreseeable that visitors would seek out areas of heavy foliage, even if they had to scale or go through the rudimentary fence to do so. The State did not offer any evidence to establish that claimant was in the Park without authority or after hours, nor did it rebut claimant’s testimony that the only nearby toilet facility was closed. The existence of the dirt path also *358 indicates that other persons had left the picnic area and gone into the trees at that location.
Finally, and perhaps most critically, we hold that, unlike the situation presented in Frontz (supra), it would not have been unduly burdensome or impossible for the State to have adequately safeguarded visitors from going over the edge of the cliff without warning. A simple rewording of the sign to point out that the edge of the cliff was hidden and/or that a fall from the 60-foot cliff could be life-threatening would undoubtedly have sufficed. If the sign had given warning that the edge of a 60-foot cliff was located approximately 30 feet from the fence and was not visible to someone walking in that direction, the court believes that neither claimant nor any reasonable person would have ventured further.
Claimant, however, is not totally free from negligence herself. She ignored a sign[3] which warned of danger and indicated at least the existence of a cliff; she climbed over or through the fence on which the sign was located; and she walked into the heavily vegetated area beyond the fence when it was dusk and when her judgment was undoubtedly affected by the consumption of four cans of beer and a small quantity of whiskey. Claimant’s negligence does not rise to the level that it was a superseding force absolving the negligent defendant from its liability — that is, to "replace the defendant’s negligence as the legal cause of the accident” — nor does her behavior constitute an express assumption of any risk " 'with full understanding of the possible harm’ ” (see, Mesick v State of New York, 118 AD2d 214, 218, 219, supra). Her conduct does, however, require an apportioning of the responsibility for her injuries. The court finds that both claimant’s and defendant’s negligence were proximate causes of the accident and that both were equally culpable.
The Chief Clerk is directed to enter interlocutory judgment accordingly, and to schedule the damages phase of the trial as soon as possible.

. Inasmuch as the claim of Nelson Walter, Danielle’s father, is derivative in nature, the term claimant, when used in this decision, shall mean and refer to claimant Danielle Walter, unless the context requires otherwise.

. All testimonial quotes are from the court’s trial notes.

. Although claimant testified that she did not see the sign, this is of no moment for, as previously noted, she was bound to see what by the proper use of her sense was there to be seen and there was no proof that the sign was not in place or in any manner obscured (Johnston v State of New York, 127 AD2d 980, 981).