Millard v Miner (2025 NY Slip Op 51397(U))

[*1]

Millard v Miner

2025 NY Slip Op 51397(U)

Decided on September 3, 2025

Supreme Court, Kings County

Ward, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 3, 2025
Supreme Court, Kings County

Darcia Millard, Plaintiff,

against
Denise Miner, Defendant.

Index No. 25180/2010

John Carro, Esq.
Carro and Carro LLC 
Attorneys for Plaintiff 
P.O. Box 20181 
New York, New York 10001 
(212) 213-5005
Ronald Paul Hart, Esq.
Attorney for Defendant
225 Broadway, Suite 2815 
New York, New York 10007
(212)766-1443

Kerry J. Ward, J.

The following papers read herein: Document Nos.:
Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed 51-52, 123-124
Opposing Affidavits/Answer (Affirmations) 110, 126
Affidavits/ Affirmations in Reply 122, 132
Other Papers:
Upon the foregoing papers in this adverse possession action, defendant Denise Miner (defendant) moves,[FN1]
pursuant to CPLR 4404 (a), for an order setting aside the jury verdict in the interest of justice, and/or as against the weight of the evidence, on the basis that (i) plaintiff Darcia Millard's (plaintiff) allegedly minimal improvements to the premises do not satisfy her burden to establish improvements by clear and convincing evidence, pursuant to former RPAPL 522, and (ii) plaintiff's counsel's improper comments during summation deprived defendant of a fair trial (motion sequence number 15). By way of a separate motion, defendant moves, pursuant to CPLR 4401, for an order directing a verdict in defendant's favor and dismissing the complaint on the ground that plaintiff failed to satisfy either the thrifty owner requirements of RPAPL 522 or the hostility element of an adverse possession cause of action (motion sequence number 16)[FN2]
.
Defendant's motion (motion sequence number 16) for a directed verdict pursuant to CPLR 4401 is granted, the complaint is dismissed, and, to the extent that this action is a declaratory judgment action, it is declared that plaintiff is not the lawful owner and is not entitled to any declarations in her favor. Defendant's motion pursuant to CPLR 4404 (a) (motion sequence number 15) is denied as moot.
 BACKGROUND
In the instant action under Real Property Actions and Proceedings Law article 15, plaintiff alleges that she adversely possessed a two-family house located in Brooklyn, New York (the Property) pursuant to former RPAPL 522 for which title ownership is currently held by defendant Denice Miner [FN3]
. It is undisputed that plaintiff's aunt and uncle, Doris Millard and Phillip Millard, purchased the Property on July 6, 1964 (see NY St Cts Elec Filing [NYSCEF] Doc No. 108, deed at 3). Defendant is the only child of Doris Millard, who died on April 9, 1983 (see NYSCEF Doc No. 106, death certificate at 2). Phillip Millard, plaintiff's uncle, died on June 24, 1980 and was survived by his spouse Rose Millard, now known as Rose Wyche, and his children Lawrence Millard and Eric Wyche, also known as Eric Millard (see NYSCEF Doc No. 107, death certificate at 2). Plaintiff's mother, Doreen Millard, is the sister of Doris Millard and Phillip Millard. Plaintiff concedes that: (i) defendant is the only legal heir or distributee of Doris Millard; (ii) that Rose Wyche, Lawrence Millard and Eric Millard are the only heirs or distributees of Phillip Millard; and (iii) although plaintiff's mother, Doreen Millard, was a sister of Doris Millard and Phillip Millard, plaintiff is not an heir or distributee of either Doris Millard or Phillip Millard (see NYSCEF Doc No. 5, amended complaint, ¶¶ 10 and 16; NYSCEF Doc No. 6, affidavit of plaintiff ¶¶ 7-16). As such, plaintiff's claimed ownership interest in the Property rests exclusively on her adverse possession claim, as distinguished from a claimed [*2]entitlement to ownership of the Property via intestate succession (NYSCEF Doc No. 5, amended complaint, ¶¶ 10 and 16-17; see NYSCEF Doc No. 115, Trial Tr. at 627, lines 8-10 and 629, lines 18 to 25).
Plaintiff's Evidence at Trial
Plaintiff testified at trial that she first lived at the Property when she was a newborn in 1971 until 1982 or 1983, when her mother and stepfather got married and bought a house together (NYSCEF Doc No. 112, Trial Tr. at 60, lines 10-21). Plaintiff returned to live at the Property in 1995 with her child, Malik Millard, at the encouragement of her mother, Doreen Millard (id. at 62, line 19 to 63, line 23). According to plaintiff, the Property is a two-family dwelling, comprising separate residential units on the first and second floors. Plaintiff further claims that these units have been continuously occupied by various members of the plaintiff's family since the plaintiff's infancy (id. at 61, lines 10-25). When plaintiff was a child, the first-floor apartment was occupied by her grandmother Mildred Millard, her mother Doreen Millard and plaintiff's younger brother Lue Rahms, while the upstairs apartment was occupied by Doris Millard, defendant, and Calvin Boone, an uncle, who lived there until his death (id. at 61, lines 19-25). Further, at some point, an uncle, James Millard and his wife, Bertha Millard, both of whom had a primary residence in New Jersey, but worked for the New York City Transit Authority, started living in the upstairs apartment during the work-week (id. at 62, lines 5-18). According to plaintiff, after she moved out of the Property in 1982 or 1983, her grandmother Mildred Millard continued to live in the first-floor apartment until her death in 1987 (id. at 65, lines 9-15). Following Mildred Millard's death, plaintiff's "Uncle Clark" lived in the first-floor apartment with his wife and sons. Uncle Clark died in 1990 but his wife and sons continued to live in the first-floor apartment until a year or two after his death (id. at 65, lines 15-22). The first-floor apartment remained vacant from that time until plaintiff returned to the Property in 1995. (id. at 65, lines 9-22).
Before plaintiff's 1995 return to the Property, plaintiff's mother informed her that Uncle James Millard (who was also referred to as Uncle Jimmy) had earlier taken up residency in the second-floor apartment and, as a result, plaintiff would be moving into the then-unoccupied first-floor apartment (id. at 63, line 24 to 64, line 22). Plaintiff herself had no discussions with any family members about moving into the first-floor apartment, other than her mother, and was not part of any family "sit down" regarding her imminent tenancy at the Property (id.). Plaintiff stated that soon thereafter, on May 1, 1996, Uncle James Millard vacated the second-floor apartment and left the Property upon his retirement (id. at 68, line 22 to 69, line 2).[FN4]

According to plaintiff, after Uncle James Millard left the Property on May 1, 1996, she resided continuously in, and had exclusive possession of, the entire Property, with her son, during a ten-year period from May 1, 1996 to May 1, 2006 (the 1996 to 2006 Period), and that she continues to reside there to the present (id. at 60, lines 8-9; at 135, lines 24-25 to 136, lines 1-7). Plaintiff testified that she arranged to have the locks at the Property changed in June of [*3]1997, and again in February 2003, because of apparent unauthorized entries of third-parties into the building and that she did not provide copies of these new keys to anyone, other than immediate family members (i.e. mother, father and brother) and certain unrelated friends during the 1996 to 2006 Period (id. at 109, line 8 to 112, line 2). Plaintiff further testified that, other than occasional guests, she did not grant any person, including defendant, permission to reside in, or use, the Property during the 1996 to 2006 Period (id.). With respect to the second-floor apartment after Uncle James Millard moved out, plaintiff testified that such apartment "was not livable to be rented out," that no one resided there, and that it had no electricity (see NYSCEF Doc No. 112, Trial Tr. at 192, lines 4 to 16).[FN5]
Although she did not use the second-floor space as part of her living area, she did use it as storage space (id. at 208, lines 13-16; at 209, lines 7-14) and allowed her friend Constance Dennis to store items there in late 1996 or early 1997 (id. at 115, lines 2-10). 
Defendant, according to plaintiff, made only three visits to the property after her Uncle James Millard moved out (id. at 116, lines 18-22; at 137, lines 12-14). The first visit was in the spring of 1996, when defendant, using a key she had in her possession, entered the Property in order to get some items that Uncle James Millard had left for her in the second-floor unit (id. at 108, lines 18-25; at 109, line 1). Defendant's next visit was in 1997, a couple of months after plaintiff had changed the locks the first time, and at that time defendant was only able to enter after plaintiff let her into the house (id. at 111, lines 15-25). At that time, plaintiff told defendant that she was not giving her any keys due to safety concerns (as plaintiff claims that she had previously observed the front door to the Premises, which she had earlier locked, in a wide-open position upon returning one evening) and defendant responded by saying "okay" (id. at 111, lines 21-24). Although plaintiff alleged that a third visit occurred while she was not at home, during which time plaintiff's friend, Constance Dennis was staying at the Property and refused entry to the plaintiff (id. at 115, lines 18-25 to 116, lines 1-17; at 137, lines 19-21), Ms. Dennis, in her testimony, was unable to identify defendant as the person who knocked at the door (id. at 237, lines 8-25 to 238, lines 1-13).[FN6]
Plaintiff denied ever having any discussions with defendant regarding ownership of the house or that anyone ever stopped by the house to pick up mail (id. at 136, lines 8-24). She also stated that she had no contact with Lawrence Millard while living at the Property and that he never visited the house (id. at 138, lines 6-10).
With respect to care of the property, plaintiff testified that, during the 1996 to 2006 Period, she solely paid for all expenses related to repairs, improvements, maintenance, real estate taxes, as well as gas, electric, water, sewer, cable and phone services associated with the Property, without receiving any contribution or assistance from defendant (id. at 71, lines 1-22; [*4]at 106, lines 21-25 to 107, lines 1-6; at 117, lines 1-25 to 122, lines 1-18; at 127, lines 12-25 to 133, lines 1-19; at 136, lines 11-13). Moreover, plaintiff testified that no one else sent contractors to perform work on the house (id. at 136, lines 8-22). In addition to personally covering all property-related expenses, plaintiff stated that her stepfather did maintenance/repair work around the house when she first moved in and continued to do such work after Uncle James Millard moved out (id. at 66, lines 1-25 to 67, lines 1-2; at 74, lines 8-15; at 65, line 24 to 66, line 17; at 66, lines 8 to 17; at 190, lines 2 to 21; at 66, line 21 to to 67, line 2). According to plaintiff, following Uncle James Millard's departure, she undertook various projects to improve the Property (id. at 74, lines 8-10; at 99, lines 23-25 to 100, lines 1-3) including installing a new water heater installed 1999 or 2000 (id. at 121, line 21 to 122, line 16), window replacement (id. at 71, lines 6 to 22 and 120, line 19 to 121, line 11), updated electrical work (id. at 94, line 20 to 95, line 3), a kitchen remodel (id. at 121, lines 12 to 19; at 161, lines 1 to 18; at 71, lines 3 to 5; at 106, line 19 to 107, line 6) and exterior work including painting, replacing the front steps and repairs to the roof (id. at 101, line 5 to 102, line 15).
On cross-examination, defendant's counsel questioned plaintiff extensively about the fact that she did not possess any receipts or canceled checks showing that she paid for any alleged repair/maintenance improvements or covered utility or tax charges (id. at 156, lines 15-25 to 157, lines 1-25; at 159, lines 22-25 to 160, lines 1-25; at 171, lines 7-25 to 176, lines 1-12). Moreover, plaintiff conceded that she did not pay for homeowners' insurance on the Property (id. at 169, lines 21-25 to 170, lines 1-25) or pay rent (id. at 158, lines 2-4) 
In her testimony, plaintiff's friend, Constance Dennis, stated that she regularly visited plaintiff after plaintiff moved into the Property, that she stored some her items in one of the upstairs rooms at one point and that, during her visits, she did not observe anyone living there other than plaintiff and her son (id. at 231, lines 1-25 to 232, lines 1-25).
Plaintiff's mother, Doreen Millard, testified, as is relevant here, that before plaintiff moved into the first-floor apartment, she informed her brother James Millard of the planned move. However, she stated that she did not discuss plaintiff's move with any other family members and did not hold any family meetings regarding the matter (id. at 260, lines 1-8; at 272, lines 6-9). In the same vein, Doreen Millard testified that she had very little contact with defendant after defendant became an adult and that she never discussed the Property or plaintiff with defendant (id. at 263, lines 4-19).
Defendants' Case
In contrast to plaintiff's testimony, defendant testified that plaintiff did not live at the Property at any time between 1981 and late 1999 (NYSCEF Doc No. 114, Trial Tr. At 513, lines 20-23). According to defendant, in 1999, at a family meeting held at the second floor of the property attended by defendant, Lawrence Millard, Uncle James Millard and some other family members, plaintiff stated that her mother had kicked her out of the house because she was pregnant and plaintiff asked if she could stay in the downstairs unit of the Property that had not been occupied from 1988 to 1999 (id. at 514, lines 3-14; at 515, lines 1-15). Defendant testified that, she agreed to permit plaintiff to use the unit as long as plaintiff agreed to protect and maintain the property and pay the utilities, and plaintiff agreed to do so moving into the first-floor apartment in or around October 1999 (id. at 515, lines 22-25 to 516, lines 1-25). After plaintiff moved in, defendant stated that she would make monthly visits to the property to pick-up the mail and do a walk-through of the Property (id. at 517, lines 4-12). Defendant also testified that, except for a one-time payment by Doreen Millard, and, with the help of Uncle [*5]James Millard for some years, she paid for the property taxes and property insurance from 1983 to 2006 (id. at 517, lines 18-24; at 519, lines 18-20; at 525, lines 1-10; at 527, lines 10-16; at 528, lines 3-10).[FN7]
With respect to keys, defendant testified that she and Lawrence Millard retained keys and, given that plaintiff did not move into the premises until 1999, she was not locked out of the premises in 1997, and, contrary to plaintiff's testimony, she was not locked out in 2003 (id. at 516, lines 15-19; at 528, lines 14-25 to 529, line 1). Indeed, defendant states that she always had access to the Property and that plaintiff never told her that she would be excluded and not allowed back on the Property (id. at 556, lines 15-25). 
As to the work pertaining to the exterior of the Property, defendant admitted on cross-examination, that, in 2005, plaintiff arranged for masonry work to be performed, the stoop to be restored, and the roof to be replaced (see NYSCEF Doc No. 115, Trial Tr. at 625, line 6 to 628, line 6; at 628, line 8 to 629, line 25).
In his testimony, Lawrence Millard stated that he had a key to the Property, that he regularly visited the Property with defendant to retrieve the mail and check out the property, that the locks were never changed, and that he never had trouble accessing the Property (NYSCEF Doc No. 113, at 303-318). Lawrence Millard, however, asserted that, other than one incident, he never saw plaintiff during his visits to the Property between 1996 to 2006 (id. at 317, lines 18-23 to 318, lines 5-10). 
Defendant also called Cheryle Williams, a licensed real estate broker, to establish that plaintiff did not meet the so-called "usually improved" requirement for an adverse possession claim. To that end, Williams testified that, based on her walkthrough of the Property conducted on October 22, 2012, a plethora of elements of the Property were in disrepair (see NYSCEF Doc No. 114, Trial Tr. at 371 to 458).
The Jury Verdict
After the parties rested and the court instructed the jury, the jury reached a unanimous verdict in favor of plaintiff as to her adverse possession claim, answering the following six interrogatories in the affirmative, as shown in the verdict sheet:
1) Was Darcia Millard's possession of 22 Louis Place hostile and under a claim of right during the period of May 1, 1996 to May 1, 2006? ....
2) Did Darcia Millard actually possess 22 Louis Place during the period of May 1, 1996 to May 1, 2006? . . . .
3) During the period of May 1, 1996 to May 1, 2006, was Darcia Millard's possession of 22 Louis Place open and notorious? . . . .
4) Did Darcia Millard possess 22 Louis Place exclusively during the period of May 1, 1996 to May 1, 2006? . . . .
5) Was Darcia Millard's possession of 22 Louis Place continuous from May 1, 1996 to May 1, 2006? . . . .
6) From May 1, 1996 to May 1, 2006, did Darcia Millard usually improve 22 Louis Place? . . . .

 (NYSCEF Doc No. 49, verdict sheet, ¶¶ 1-6).

DISCUSSION

In moving, defendant reiterates her trial position that plaintiff failed to demonstrate the elements of adverse possession.[FN8]
Since, as alleged here, plaintiff's adverse property right vested in May 2006, it is undisputed that the 2008 amendments to the adverse possession statute (see L 2008, ch 269, § 5; RPAPL art 5) are inapplicable to plaintiff's claim (see Lewis v Reeves, 236 AD3d 777, 781 [2d Dept 2025]; Salzberg v Sena, 204 AD3d 853, 856 [2022]).[FN9]
Under the pre-amendment law, in order to establish a claim to property by adverse possession, a claimant must prove, by clear and convincing evidence, that possession of the property was "(1) hostile and under [a] claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period" (Walling v Przybylo, 7 NY3d 228, 232 [2006]; see Lewis, 236 AD3d at 781; SLC Coram, LLC v 543 Middle Country Rd. Realty, LLC, 161 AD3d 1122, 1123-1124 [2d Dept [*6]2018]). "In addition, where, as here, the claim of right is not founded upon a written instrument, the party asserting title by adverse possession must establish that the land was 'usually cultivated or improved' or 'protected by a substantial inclosure'" (Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012], quoting former RPAPL 522; see Salzberg, 204 AD3d at 856).
Defendant, in her motion papers, focuses her arguments on the hostility requirement element and on the "usually cultivated or improved" and "protected by a substantial enclosure" requirements of former RPAPL 522.
The court first examines the hostility requirement. "'The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period'" (Walling, 7 NY3d at 232, quoting Monnot v Murphy, 207 NY 240, 245 [1913]). "The purpose of the hostility requirement is to provide the title owner notice of the adverse claim through the 'unequivocal acts of the usurper'" (Bratone v Conforti-Brown, 150 AD3d 1068, 1070 [2d Dept 2017], quoting Monnot, 207 NY at 245, lv denied 31 NY3d 902 [2018]). The party claiming title by adverse possession "is not required to show enmity or specific acts of hostility in order to establish the element of hostility" (Greenberg v Sutter, 257 AD2d 646, 646 [2d Dept 1999]). This element is satisfied where an individual asserts a right to the property that is "adverse to the title owner and also in opposition to the rights of the true owner" (Walling, 7 NY3d at 232-233). Generally, the element of "'[h]ostility can be [presumed] simply from the existence of the remaining four elements, thus shifting the burden to the record owner to produce evidence rebutting the presumption of adversity'" (Estate of Clanton v City of New York, 153 AD3d 787, 789 [2d Dept 2017]; quoting Bratone v Conforti-Brown, 79 AD3d 955, 957 [2d Dept 2010] [internal quotation marks omitted]; see Di Leo v Pecksto Holding Corp., 304 NY 505, 512 [1952]; Montanaro v Rudchyk, 189 AD3d 1214, 1216-1217 [2d Dept 2020]).
Where, however, the user and the landowner are related by blood, "the proponent is not accorded the benefit of the presumption [of hostility] and must present affirmative facts to support the conclusion that his or her use was under a claim of right and adverse to the interests of the landowner" (Wechsler v New York State Dept. of Envtl. Conservation, 193 AD2d 856, 860 [3d Dept 1993], lv denied 82 NY2d 656 [1993]; see Weinberg v Shafler, 50 NY2d 876, 878 [1980], affirming for the reasons stated below 68 AD2d 944, 945 [3d Dept 1979]; Matter of Lee, 96 AD3d 941, 943 [2d Dept 2012]; Sugarman v Malone, 30 AD3d 197, 198 [1st Dept 2006]; Turner v Baisley, 197 AD2d 681, 682 [2d Dept 1993]). Indeed, there are some cases that go even further noting that the presumption of hostility does not apply for blood relatives and recognizing that the existence of permissive use arises from such family relationships (see Turner, 197 AD2d at 682; see also Barra v Norfolk S. Ry. Co., 75 AD3d 821, 824 [3d Dept 2010]; but see Matter of Lee, 96 AD3d at 943). 
The court may only grant defendant's CPLR 4401 motion on the ground that plaintiff failed to establish the hostility requirement if it finds, "upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the [plaintiff]" (Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]; see Suzanne P. v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist., 41 NY3d 391, 398-399 [2024]; Chicoine v Mendola, 233 AD3d 841, 843 [2d Dept 2024]; Canale v L & M Assoc. of NY, Inc., 155 AD3d 675, 677 [2d Dept 2017]). In considering the motion, the evidence must be viewed in the light most favorable to the nonmoving party, and the court must afford the nonmoving party "every inference which may properly be drawn from the facts presented" (Szczerbiak, 90 NY3d at 556; Chicoine, 233 [*7]AD3d at 843; Canale, 155 AD3d at 677).[FN10]
This same standard applies to the portion of plaintiff's CPLR 4404 (a) motion for a judgment as a matter of law (see Chicoine, 233 AD3d at 843; McConnell v County of Nassau, 228 AD3d 649, 651 [2d Dept 2024]).
Here, it is undisputed that plaintiff is a blood relative to the record owners, and thus, the presumption of hostility that would arise from demonstrating the other four elements of adverse possession does not apply (see Matter of Lee, 96 AD3d at 943; Sugarman, 30 AD3d at 198; Turner, 197 AD2d at 682). Given that this presumption does not apply, this court finds that plaintiff's case fails to affirmatively demonstrate that plaintiff's use of the Property was hostile. Notably, plaintiff, in her own testimony, outlines a long history of various family members living in both the first and second-floor units of the Property that began while Doris Millard and Phillip Millard were the owners of the property and that such pattern continued after they both died and defendant and Lawrence Millard succeeded in ownership. There is no testimony that any of these family members paid rent to live in the family home. In view of this history suggesting, at the very least, that family members had implied permission to live there, plaintiff's moving into the ground floor unit with her son does not affirmatively show hostility despite the testimony of plaintiff and her mother, Doreen Millard, that they did not speak to or seek permission of any family members other than Uncle James Millard before plaintiff commenced occupancy (see Weinberg v Shafler, 68 AD2d 944, 945 [3d Dept 1979], affd on the opinion below 50 NY2d 876 [1980]; see also Turner, 197 AD2d at 682). That plaintiff and her son continued to live in the first-floor unit after Uncle James Millard moved out and did so without paying rent also does not show any outward change in plaintiff's use of the property that would show hostility.
Plaintiff's testimony regarding her having the locks changed and her interactions with defendant likewise do not show hostility. With respect to the defendant's first visit, which occurred shortly after Uncle James Millard left the Property in the Spring of 1996, defendant entered into the Property using her own key to enter the premises to pick up some items from Uncle James Millard's former upstairs apartment. Because plaintiff has failed to demonstrate that her mere presence alone on the Property was hostile, she likewise cannot rely on defendant's silence regarding her presence as evidence of acquiescence to hostile possession. Indeed, such silence is equally consistent with an inference of implied permission for plaintiff to reside at the Property. 
Hostility is also not established by plaintiff's subsequent interactions with defendant. Plaintiff's decision to have her brother install new locks after discovering that some individual had left the front door wide-open in 1997, standing alone, does not demonstrate an intent to exclude defendant from the Property. Similarly, plaintiff's refusal to provide defendant with a key during that time does not evince hostility, as her stated reason was not to bar defendant from the Property, but rather to limit circulation of keys in order to ensure the safety of herself and her son. Notably, plaintiff, nonetheless, opened the door for defendant to allow her access to the Property (NYSCEF Doc No. 112, Trial Tr. at 111, lines 15-25). Following an apparent break-in in 2003, plaintiff again had the locks changed and claims that she did not provide defendant with a key at that time either. However, the court again notes that this decision was not made to bar defendant from entering the Property but solely for safety precautions. Plaintiff also alleges that in 2005, defendant was unable to enter the Property while she was at work and a friend, Constance Dennis, was visiting. However, this incident is inconclusive, as Ms. Dennis testified that she was unable to identify the individual who came to the door as defendant. (id. at 237, lines 8-25).
Ultimately, there is nothing about plaintiff's use of the property or her interactions with defendant or Lawrence Millard that would allow an inference of hostility. While plaintiff, in her testimony, recounts some repair, maintenance and renovation work she had caused to be performed, none of this work is inconsistent with a permissive use of the Property (see Turner, 197 AD2d at 682 [despite plaintiff's using a triangular parcel as part of a front yard wherein plaintiff's had planted trees and other flora, plaintiff's conclusory assertions of hostile use were insufficient to demonstrate issues of fact as to hostile use where plaintiff was blood relative of defendant]). Moreover, even if, contrary to this court's conclusion, plaintiff's refusal to provide defendant with keys, when she came to the Property a few months after the locks were changed in 1997, could support an inference of hostility, the earliest such conduct could be construed as adverse would be in 1997. Accordingly, plaintiff has failed to establish that she possessed the Property under a claim of right for the requisite 10-year statutory period (see Bratone, 160 AD3d at 1072).
The court notes that this case bears some facial factual similarities with the Appellate Division, Second Department's decision in Matter of Lee (96 AD3d 941), in which the Court found that plaintiff had sufficiently alleged facts showing hostility for purposes of an adverse possession claim involving blood relations (id. at 943). In so holding, the Court noted that, "the amended complaint, amplified by the affidavits, alleges that [plaintiffs] never had any communication with the decedent concerning her possession of the premises, that the plaintiffs never sought or gained the express or implied permission of the decedent to use or possess the premises, and that they never paid any rent to the decedent or otherwise compensated her for their possession of the premises" (id.). Matter of Lee, however, does not compel a finding that plaintiff has sufficiently demonstrated hostility to allow the matter to be submitted to the jury. Notably, Lee was decided in the context of a CPLR 3211 (a) (7) dismissal motion rather than that of a CPLR 4401 motion (see Avamer 57 Fee LLC v Hunter Boot USA LLC, ___AD3d ___, 2025 NY Slip Op 04607 [1st Dept 2025]). Furthermore, as discussed above, and unlike in Lee, plaintiff's own proof significantly recounts a long history of family use of the Property by various family members that warrants a finding of the existence of implied permission even in the absence of direct contact between plaintiff, defendant and Lawrence Millard (see Weinberg, 68 AD2d at 945; see also Sugarman, 30 AD3d at 198; Turner, 197 AD2d at 682; Wechsler, 193 [*8]AD3d at 860).
Accordingly, this court finds that there was no rational process by which a jury could have found that plaintiff's proof satisfied the hostility requirement for an adverse possession claim. Thus, the court grants defendant's CPLR 4401 motion, dismisses the complaint, and, to the extent that this is deemed a declaratory judgment action, declares that plaintiff is not the lawful owner of the Property by adverse possession or any other means (see Parrino v People, 210 AD3d 898, 899 [2d Dept 2022], lv denied 39 NY3d 909 [2023]). Given this determination and the above findings, this court has not addressed the merits or entertained the remaining issues raised by defendant in support of her motion to set aside the jury verdict, pursuant to CPLR 4404 (a) as against the weight of the evidence or in the interest of justice and denies said motion (motion sequence number 15) as academic.
This constitutes the decision, order and judgment of the court.
DATED: September 3, 2025
ENTER
HON. KERRY J. WARD, A.J.S.C.

Footnotes

Footnote 1:As a result of a so ordered stipulation dated March 11, 2024, the caption was amended to leave Denise Miner as the only defendant. The other defendants, as identified in the amended complaint, dated October 25, 2010, were Rose Wyche, a/k/a and previously identified as Rose Millard, Eric Wyche, a/k/a Eric Millard and Lawrence Millard.

Footnote 2:The court reserved decision on such motion during the trial.

Footnote 3:Pursuant to a quitclaim deed dated December 22, 2010, Lawrence Millard conveyed his interest in the property to Denise Miner. Of note, in the deed, Lawrence Millard identified himself as the "sole Distributee and Heir-at Law of Phillip Millard" (NYSCEF Doc No. 12).

Footnote 4:According to plaintiff, Uncle James Millard's wife, Bertha Millard, had apparently retired before her husband did, and was not staying in the upstairs apartment when plaintiff moved into the downstairs apartment in November 1995 (id. at 62, lines 12-18; at 67, lines 3-8).

Footnote 5:As part of her case, plaintiff called a Con Edison employee who testified that its records showed that the electrical service for the second floor was turned off on September 27, 1996 and that the service was never turned back on (id. at 227, lines 11-25 to 228, lines 1-8).

Footnote 6:Constance Dennis, who identified herself as a long-time friend of plaintiff, testified that while she was staying at plaintiff's house during a visit from Florida, a person knocked at the door while plaintiff was at work. Dennis did not recognize the person at the door and the court sustained an objection to Dennis' testimony that this person had identified herself as plaintiff's cousin Denise (id. at 237, lines 8-25 to 238, lines 1-13).

Footnote 7:On cross examination, however, defendant admitted she signed affidavits containing statements that her Uncle James Millard resided in the upstairs apartment until his death in 2008 and that he was the person who cared for the Property by paying property taxes, water charges and maintenance costs until his death in 2008 (NYSCEF Doc No. 115, Trial Tr. at 603, lines 1- 25 to 604, lines 1-17). 

Footnote 8:The court notes that defendant, after plaintiff rested, moved for a judgment as a matter of law on the ground that plaintiff failed to demonstrate the elements of adverse possession (NYSCEF Doc No. 113, Trial Tr. at 287, lines 3-7). The court reserved decision on the motion at that time (id. at 296, lines 13-14) and reserved decision again upon defendant's renewed motion after the close of the evidence (NYSCEF Doc No. 116, Trial Tr. at 729, lines 4-7) (see Brewer v Ross, 188 AD3d 780, 782-783 [2d Dept 2020] [the better practice is for a trial court to reserve determination of a motion for a directed verdict until after the action goes to the jury]). After excusing the jury, the court had requested that the parties set up a briefing schedule to address the issues relevant to the motion to dismiss (id. at 745, lines 17-25 to 746, lines 1-6). Although defendant thereafter made her motion to set aside the verdict pursuant to CPLR 4404, the motion papers only address the narrow issue of whether plaintiff satisfied the "usually cultivated or improved" or "protected by a substantial inclosure" requirements of former RPAPL 522 (see motion sequence number 15). At a conference conducted after defendant's initial post-verdict motion (motion sequence number 15), the court noted that the motion papers failed to address the other elements of plaintiff's adverse possession claim. Defendant's motion for a directed verdict pursuant to CPLR 4401 (motion sequence number 16) was made in response to the court's discussion with the parties.

Footnote 9:The 2008 amendments added a new definition of what "under claim of right" means. RPAPL 501 (3) currently states that "[a] claim of right means a reasonable basis for the belief that the property belongs to the adverse possessor or property owner, as the case may be" (see SLC Coram, LLC v 543 Middle Country Rd. Realty, LLC, 161 AD3d 1122, 1123 [2d Dept 2018]). Under the law prior to the amendments, actual knowledge by the possessor regarding the true owner of the property was insufficient to defeat a finding of a claim of right. Rather, the prior law required an overt acknowledgment during the statutory period that ownership rested with another party (id.; see Walling v Przybylo, 7 NY3d 228, 232-233 [2006]).

Footnote 10:Under the circumstances of this case, where the evidence presented during defendant's case does not correct any defects in the plaintiff's case (see 622 W. 113th St. Corp. v Chemical Bank NY Trust Co., 52 Misc 2d 444, 447 [Civ Ct, New York County 1966]) or shows that the testimony of plaintiff or her mother to be incredible as a matter of law (see Annunziata v Colasanti, 126 AD2d 75, 81 [1st Dept 1987]), the determination of defendant's CPLR 4401 motion and the portion of defendant's CPLR 4404 (a) motion for a judgment as a matter of law turns entirely on the proof submitted during plaintiff's case. Despite this standard, much of defendant's factual argument in her motion papers rests on facts adduced during the defense case. At oral argument, the court informed the parties that it could not direct a verdict in defendant's favor based on evidence contained in the defense case and the parties agreed that the court was warranted in determining this portion of the motion by only considering plaintiff's proof and would not consider the contrary evidence submitted by defendant.